STATE OF MISSOURI at the relation of the CITY OF SPRINGFIELD, Relator, v. FORREST SMITH, State Auditor.—125 S. W. (2d) 883.

Court en Banc, March 6, 1939.

*Kirby W. Patterson* for relator.

152

*Roy McKittrick,* Attorney General, and *J. E. Taylor,* Assistant Attorney General, for respondent.

LEEDY, J.—This is an original proceeding in mandamus whereby relator, City of Springfield, seeks to compel respondent, as State

Auditor, to register Bond No. 1 of an issue of serial bonds of said city, aggregating the sum of $220,135.00, authorized at a special election held October 25, 1938, for the purpose of constructing improvements to certain of its existing sewage plants.

The facts are agreed, and the single issue presented is one of law, i. e., the validity of the notice of the special election. Stated in its simplest terms, the question is this: Whether the required notice is that prescribed by two sections of the statutes (6511 and 6697), which are a part of the article constituting the charter of cities of the second class (Art. 3, Chapter 38, R. S. 1929), to which class relator city belongs; or, as respondent contends, the matter is governed by an earlier, general statute (Sec. 7218) which forms a part of Article 10, Chapter 38, Revised Statutes 1929, and which article is entitled "Miscellaneous provisions applicable to all cities, towns and villages."

The latter section (what is now Sec. 7218) was first enacted in 1889, and appeared as Section 1948 in the revision of that year. It has since undergone certain changes [Laws 1919, p. 576 (repealed and re-enacted), Laws 1927, p. 317 (repealed and re-enacted)], but from the time it was first enacted until 1919 its provisions touching the matter of notice were as follows: "The council . . . shall order a special election to be held, of which they shall give not less than fifteen days' previous notice, by publication in some newspaper," etc. In that particular, it will be seen that its provisions and those of the later enacted Section 6697, supra, were the same; but as it now stands, it is provided that the notice "shall be advertised by publication once a week for three consecutive weeks," the first publication to "be made at least twenty-one days before, and the last shall be within two weeks of the date of the election."

Section 7221 remains in the same form as when originally enacted in 1889, as follows: "The provisions of the preceding four sections shall apply to all cities, towns and villages in this state, whether organized by special charter or under the general laws of the state, any provision in any special charter of any city, town or village in the state to the contrary notwithstanding."

The case really turns upon the effect to be given the foregoing section, when construed with the article on cities of the second class, adopted in 1913. [Laws 1913, pp. 420-516.] The text of the two vital sections of which, are, respectively, as follows:

[6697] "For the purpose of testing the sense of the voters of any such city, upon a proposition to become indebted or to increase the debt thereof, as contemplated in the next preceding section, the council shall order a special election to be held, of which they shall give not less than fifteen days' previous notice, by publication in some newspaper published therein."

[6511] "Whenever *any* ordinance or *proposition* is to be submitted to the voters of the city at any election, the city clerk shall cause the ordinance or proposition to be published at least three times in one daily newspaper published in such city, said publication to be made not more than twenty nor less than ten days before the submission of such proposition or ordinance to the vote of the people; and if such ordinance or proposition relates to a franchise or grant, or any amendment or modification thereof, the expense of said publication shall be borne by the applicant for said franchise or grant." (Italics ours.)

The notice in question was published for four successive days, namely, October 10, 11, 12 and 13, the first publication being fifteen days before the date of the election, and the last publication twelve days before the date of said election. This, respondent concedes, was sufficient to comply with both of the foregoing sections, so that, if they are controlling, our peremptory writ should issue.

█ Respondent in his brief says, "It is, of course, a general rule of statutory construction that where a special act dealing only with one class of municipalities is enacted after a general law dealing with all municipalities has been enacted the special act will be considered as an exception to the general law and its terms will prevail." But it is argued that the basis for such a rule is that the Legislature must have intended that result, and that in this case there was no such intent. It is pointed out that Section 6511 immediately follows the initiative and referendum provisions applicable to cities of the second class, and for that reason it is suggested that its operation is confined to those subjects, and that it has no reference to bond elections. However, we are of the opinion that its language is sufficiently comprehensive as to necessarily embrace the latter, for by its express terms it is made applicable not only to ordinances, but to *"any . . . proposition* (which) is to be submitted to the voters of the city at *any* election." █
We quite agree that the general statute of 1889 evinced a legislative intent, and announced the public policy of the State that there should be one all-embracing mode of calling bond elections in all cities, and thereby repealed prior conflicting statutes, if any. But, of course, it is elementary that no General Assembly can, by mere enactment, cut down the legislative power of any of its successors. [State ex rel. v. Board of Curators, University of Missouri, 268 Mo. 598, 188 S. W. 128.] So that following the 1889 enactment, it was perfectly competent for future Assemblies to deal with the subject matter thereof, and to make other and different provisions, not inconsistent with the Constitution, respecting any class or classes of cities; and this, we think, was done by the enactment in 1913 of Sections 6511 and 6697.

█ It is familiar doctrine that when there is one statute deal-

ing with a subject in general and comprehensive terms and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy, but to the extent of any necessary repugnancy between them, the special will prevail over the general statute. Where the special statute is later, it will be regarded as an exception to, or qualification of the prior general one; and where the general act is later, the special will be construed as remaining an exception to its terms, unless it is repealed in express words or by necessary implication. [Tevis et al. v. Foley, 325 Mo. 1050, 30 S. W. (2d) 68, and cases therein cited; State ex rel. v. Brown, 334 Mo. 781, 68 S. W. (2d) 55; State ex rel. McDowell, Inc., v. Smith, 334 Mo. 653, 67 S. W. (2d) 50; State ex rel. Hyde v. Buder, 315 Mo. 791, 287 S. W. 307; Folk v. City of St. Louis, 250 Mo. 116, 157 S. W. 71.] Sections 6511 and 6697 were enacted simultaneously, are consistent with each other and must be construed together. The mode of advertising bond elections, as therein provided, differs from that prescribed by the earlier general statute, Section 7218. Whether the effect of the several sections is to provide alternative modes of publication is a question we need not discuss, because, in the light of the authorities, supra, we think it manifest that the notice, when published in compliance with the provisions of the later enacted sections, must be held good, and, accordingly, our peremptory writ is awarded. All concur.