**James R. HORNSBY, Jr., & Julie R. Hornsby, Appellants,**

v.

**DIRECTOR OF REVENUE, Respondent.**

**No. 75779.**

Supreme Court of Missouri,
En Banc.

Nov. 23, 1993.

James B. Deutsch, Howard S. Smotkin, Jefferson City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

Appellants James R. Hornsby, Jr., and Julie R. Hornsby seek review of a decision by the Administrative Hearing Commission (AHC) denying a credit for taxes allegedly withheld by Hornsby's employer pursuant to § 143.211.[1] The AHC concluded that the Hornsbys were entitled to no credit except as shown on their 1989 W-2 form. Because a construction of the revenue laws is involved, this Court has jurisdiction. Affirmed.

On appeal from a decision of the AHC, this Court is to determine whether the decision is authorized by law and whether the factual findings are supported by competent and substantial evidence on the whole record. *Mo. Const. art. V, § 18.* The court gives due weight to the expertise and experience of the agency and to the agency's opportunity to observe the witnesses. *City of Cabool v. Missouri State Bd. of Mediation,* 689 S.W.2d 51 (Mo. banc 1985); *§ 536.140.*

Although James Hornsby and Hyman Products, Inc., (Hyman) had a prior business relationship, Hornsby did not become an employee until late 1987. On October 8, 1987, Hornsby claimed three income tax exemptions on his federal and Missouri W-4 forms. From January 1, 1988, through March 10, 1988, Hornsby received a biweekly paycheck showing the proper amount of withholding based upon three exemptions. However, in

---

1. All references to statutes are to RSMo 1986, unless otherwise stated.

March 1988, Hornsby requested Hyman's president of finance to stop all federal and state income tax withholding until the end of the year and to refund the amounts already withheld. On March 24, 1988, Hyman complied with this request by issuing a check for taxes withheld to that date. For the pay periods from March 11, 1988, through May 5, 1989, Hornsby's pay stub showed "99" in the block for exemptions, an accounting device for "zeroing out" any income tax withholding. Up to May 18, 1989, Hornsby's paycheck stubs continued to reflect the "99" exemptions notation.

For the period from May 18, 1989, to June 15, 1989, Hornsby's paycheck amounts and paycheck stubs again indicated three exemptions. His paycheck stub for June 2, 1989, to June 15, 1989, showed federal withholding for that period of $853.76, and Missouri withholding of $123.35. When the Hornsbys finally filed their 1989 income tax returns in January of 1991, the 1989 W–2 reflected the same withholding shown on the paycheck stubs, that is, $853.76 in federal income taxes withheld, and $123.35 in Missouri income taxes withheld. However, the Hornsbys sought credit on their return for $9,242 for Missouri taxes withheld. The director disallowed the credit except for the $123.35 reported on the W–2 form.

After filing a protest and denial of relief by the AHC, this petition for judicial review was filed.

### I.

■ Section 143.211 provides:

Any amount of tax actually deducted and withheld under sections 143.011 to 143.996 in any calendar year shall be deemed to have been paid to the director of revenue on behalf of the person from whom withheld. Such person shall be credited with having paid that amount for his taxable year beginning in such calendar year.

The Hornsbys argue that because the employer has a duty to withhold pursuant to § 143.191 and because "any amount required to be withheld and paid over to the director of revenue, and any penalties, interest and additions to tax with respect thereto, shall be considered the tax of the employer," this relieves the employee of any liability for such amounts. *§ 143.241*, RSMo Supp.1992.

The Hornsbys fail to take note of the fact that nothing in any of the sections relied on relieves them of the income tax liability imposed by § 143.011. The only amounts for which a resident is entitled to a credit is for "any amount of tax actually deducted and withheld under §§ 143.011 to 143.996...." *§ 143.211*. The Hornsbys in this case failed to establish, to the satisfaction of the AHC, that more than $123.35 was "actually deducted and withheld" by Hyman during 1989.

### II.

■ The Hornsbys dispute two aspects of the AHC findings. The first disputed finding is that Hyman did not deduct or withhold more than the amount shown on the 1989 W–2. In support of this argument, the Hornsbys point out that in 1988 Hyman waited until December 29 to deduct $31,000, of which $5,000 went to Missouri, from his pay. This device, it is argued, was designed to allow Hyman to have use of the withheld taxes for the entire year. In addition, Hornsby claims that his written contract entered into with Hyman in October of 1987 called for a salary of $125,000 plus other bonuses and benefits. At that salary, he claims that his biweekly pay with three exemptions nets $3,964.60, the amount actually paid by Hyman in 1989. Finally, Hornsby points out that he never filed a written request or W–4 claiming more than 3 exemptions. The Hornsbys would have us ignore the testimony by Hyman's president of finance that it was Hornsby who requested that no withholding be made because Hornsby was experiencing deductible losses in a separate business. While Hyman was in financial difficulty, the only one of 120 employees not having taxes deducted was Hornsby. Hornsby also conceded in his testimony that he entered into a new written employment contract in early 1989, although he was unable to produce a copy of that agreement. The paycheck stubs, the W–2, and the testimony of Hyman's president of finance were entirely consistent with the findings of the AHC. The testimony of Hornsby, unsub-

stantiated by any documents, was properly rejected.

The second disputed finding is the AHC determination that it was Hornsby, not Hyman, who desired that no deductions be made. The record supports the AHC finding. But regardless of who had the idea to stop deductions, the Hornsbys are not entitled to a credit for deductions that were not actually made.

### III.

■ The final contention is that the decision of the AHC was "unexpected" regarding assessment of tax and, therefore, collection should be prohibited pursuant to § 143.903. That statute defines "unexpected" to mean a result "that a reasonable person would not have expected ... based on a prior law, previous policy or regulation of the department of revenue." In order to prevail, the Hornsbys must show that the decision of the AHC overrules a prior case or invalidates a previous statute, regulation or a policy of the director of revenue and the decision was not reasonably foreseeable. *Lloyd v. Director of Revenue*, 851 S.W.2d 519, 523 (Mo. banc 1993). The Hornsbys identify no prior case, regulation, policy or statute requiring or permitting income tax credits to an employee for monies not actually deducted and withheld by an employer. The result here is not unexpected.

In conclusion, the determination of the AHC is supported by substantial evidence based on the whole record and is not contrary to law. The decision is affirmed.

All concur.