**Albert A. WADLEY, Plaintiff–Respondent,**

v.

**STATE of Missouri, DEPARTMENT OF SOCIAL SERVICES, DIVISION OF CHILD SUPPORT ENFORCEMENT, Defendant–Appellant.**

No. 19332.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 8, 1995.

Motion for Rehearing or Transfer
Denied March 2, 1995.

Application to Transfer Denied
April 25, 1995.

Daniel A. Parmele, Springfield, for defendant-appellant.

Keith D. Sorrell, Spain, Merrell and Miller, Poplar Bluff, for plaintiff-respondent.

1. All references to statutes are to RSMo Supp. 1993, unless otherwise indicated.

2. The State alleges that it wrote Albert on February 14, 1992, but the legal file contains no such document. It does indicate, however, that on

GARRISON, Presiding Judge.

The State of Missouri, Department of Social Services, Division of Child Support Enforcement (the State) appeals from a judgment awarding Albert A. Wadley (Albert) attorney fees pursuant to § 536.087.[1] For the reasons that follow, we affirm.

This case involves the State's efforts to collect money from Albert, pursuant to § 454.470, RSMo 1986, based on his alleged responsibility to support C.W., born on May 31, 1979. Albert's marriage to his ex-wife, Stephanie, was dissolved on or about September 17, 1982 by a decree which referred to two of the children born during the marriage but not to C.W. The record indicates that in an application for public assistance in 1980, Stephanie referred to Albert as C.W.'s father. This statement was not verified and was followed by six or seven other applications and statements of a similar nature. At one point, however, Stephanie informed the State that another person (D.C.) was C.W.'s father.

The State apparently first contacted Albert concerning support for C.W. in December 1991, at which time he was stationed in Hawaii with the military.[2] On February 21, 1992, Albert wrote the State contending that he had no legal responsibility for C.W.'s support. He informed the State that, even though he provided medical coverage for her and was listed on her birth certificate, he was not her father because she was conceived and born while he was serving in the U.S. Army in Germany. He suggested that this could be substantiated through his ex-wife, his military records, his parents, the siblings of both him and his ex-wife, and C.W. herself. In that correspondence, he named D.C. as the natural father, told the State that D.C. had last lived in Hayti, Missouri, and requested any information which the State could furnish him concerning the matter.

In response, on March 2, 1992, the State wrote Albert saying:

that date Albert received a letter from the State dated December 26, 1991, apparently concerning the same matter, although that letter is also absent from the legal file.

In regards to your statement that you are not [C.W.'s] biological father, under Missouri law you are the legal father as the child was born during your marriage to Stephanie and there has been no other father named. You must obtain an attorney to file a legal action to prove that you are not the biological father.

The Division of Child Support Enforcement must continue to establish a child support order for [C.W.], until such time as you prove that you are not the biological father.

That letter was followed, on March 16, 1992, with a Notice and Finding of Financial Responsibility pursuant to § 454.470, RSMo 1986, notifying Albert that he should begin paying, on April 15, 1992, $282 per month as support for C.W. and that, although this was only an "allegation" of responsibility, unless he either requested a hearing or signed a consent order within twenty days, a child support default order would be filed with the court. A form was attached to the notice by which Albert could request an administrative hearing. After Albert failed to respond to that notice or request a hearing, the State, on April 15, 1992, issued an Immediate Income Withholding Order which was filed with the Circuit Court of Carter County on April 22, 1992, pursuant to § 454.490, RSMo 1986, ordering that, as per § 454.505.3, $282 per month be withheld from Albert's income and forwarded to the circuit clerk.

On May 5, 1992, Albert filed a Petition For Judicial Review in which he sought to have the administrative default order set aside. He alleged, among other things, that C.W. was conceived in the United States while he was on military duty in Germany and that he was concurrently filing an action for declaration of nonpaternity. The trial court subsequently sustained Albert's motion for summary judgment based upon the State's response to requests for admissions in which it admitted that blood tests, apparently taken in the paternity suit, established that Albert was not the biological father of C.W. and that the probability of D.C. being the father was 99.97%.

Albert filed a motion, from which this appeal flows, requesting repayment of the amounts withheld from his pay. As the prevailing party, he also sought, pursuant to § 536.087, reimbursement of attorney fees and expenses incurred in prosecuting the Petition for Judicial Review, alleging that the State's action had not been substantially justified. That section provides, in part:

1. A party who prevails in an agency proceeding or civil action arising therefrom, brought by or against the state, shall be awarded those reasonable fees and expenses incurred by that party in the civil action or agency proceeding, unless the court or agency finds that the position of the state was substantially justified or that special circumstances make an award unjust.

The trial court awarded Albert a judgment for the amounts withheld from his pay and also entered a judgment for attorney fees and expenses in the amount of $1,878.40.

The State appeals only the judgment awarding attorney fees and expenses. In its sole point relied on, the State premises trial court error on the theory that it was substantially justified in entering the Notice and Finding of Financial Responsibility as well as the Default Order because Albert was "the legally presumed father of the minor child."

In order to "modify, reverse or reverse and remand" a determination of attorney fees and expenses, this court must find that the award, or the calculation of the amount of the award, "was arbitrary and capricious, was unreasonable, was unsupported by competent and substantial evidence, or was made contrary to law or in excess of the court's or agency's jurisdiction." § 536.087.7.

Section 536.087 and its "substantially justified" test is patterned after the Federal Equal Access to Justice Act, 28 U.S.C. § 2412 (1982). *St. Joseph State Hospital v. Soliday*, 861 S.W.2d 145, 147 (Mo. App.W.D.1993). Congress passed the federal act to encourage impecunious private parties to challenge abusive or unreasonable government behavior by relieving the fear of incurring large litigation expenses. *Id.* (citing *United States v. 1,378.65 Acres of Land*, 794 F.2d 1313, 1314–15 (8th Cir.1986)). The purpose of § 536.087 is to require state agen-

cies to carefully scrutinize proceedings and to increase the agency's accountability. *Id.; State Board of Registration of Healing Arts v. Warren,* 820 S.W.2d 564, 565 (Mo.App. W.D.1991). The statute has a broad public policy purpose to ensure the legitimacy and fairness of government and the law so that contests between private citizens and the government are decided on the merits of the matter and not on the costs. *Id.* at 565.

In *St. Joseph State Hospital v. Soliday,* 861 S.W.2d at 147, the court discussed the meaning of the "substantially justified" test. In doing so it quoted, with approval, a number of federal cases and said:

The term substantially justified, " ... is not 'justified to a high degree,' but rather, 'justified in substance or in the main'—that is justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). In other words, there must be a "reasonable basis both in law and fact," for the government's action. *Id.* Under federal law, the government must bear the burden to defeat the claim for fees and costs "not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." [Citations omitted.] There must be an indication the defendant "lacked good faith in taking its position in this litigation." *Savage v. Toan,* 636 F.Supp. 156, 157 (W.D.Mo.1986).

▮ In the instant case, the trial court found that there was no legal basis for the Default Order because Albert was ultimately determined not to be the father of C.W. The fact, however, that the State lost in its dispute with Albert does not create a legal presumption that its position was not substantially justified. § 536.087.3; *Melahn v. Otto,* 836 S.W.2d 525, 528 (Mo.App.W.D. 1992). A judgment in a court-tried case, however, is to be affirmed if it can be justified on any reasonable theory supported by the evidence. *Richard's Original Long Creek Lodge v. Seymour Inn, Inc.,* 791 S.W.2d 944, 945 (Mo.App.S.D.1990).

In the instant case, the State responded to Albert's letter claiming nonpaternity, and therefore non-liability for the support of C.W., by saying, in essence, that in Missouri he was the presumed father because the birth occurred during his marriage and that a different conclusion would require him to employ an attorney and file an action to establish that he was not, in fact, the father. This position was apparently based on § 210.822, which provides, in pertinent part:

1. A man is presumed to be the natural father of a child if:

(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage. . . .

. . . .

2. ... The presumption is rebutted by a court decree establishing the paternity of the child by another man.

There existed, therefore, a presumption by statute that Albert was C.W.'s natural father. Additionally, Albert admitted that his name appeared on C.W.'s birth certificate and that he was furnishing medical coverage for her.

Albert argues, however, that the State was not required by statute to pursue the matter of support for C.W., pointing out that § 454.470.1, RSMo 1986, provides that if a court order has not previously been entered, the director ("the director of the division of child support enforcement, or his designee" as per § 454.460(5)), "may" issue a notice and finding of financial responsibility to a parent who is responsible for the support of a child. Likewise, § 454.470.4, RSMo 1986, provides that if no timely written response and request for a hearing is received, the director "may" enter an order specifying, among other things, the amount of support to be paid. He contends that because of these statutory provisions, the State's actions were discretionary and it should have investigated the facts more closely before proceeding, especially considering the information which the State had available to it. In this regard, the trial court noted, among other things, that the director "has the discretionary authority not to enter an order of support where paternity is reasonably in question." It also said: "In this case where the movant raised the issue of paternity the State could have inquired of their assignor under oath as to the circumstances surrounding the conception of the child. Failure to do this is evidence of bad faith on the part of the State."

The State has the burden to establish "substantial justification." *Melahn v. Otto,* 836 S.W.2d at 529. In the instant case, it seems inherently unreasonable for the State to have apparently ignored the information in its possession and the sources of other information reasonably available to it. This is not limited to Albert's claims, later confirmed by blood tests, that he was not the father, together with his naming of the person ultimately determined, to a probability of 99.97%, to be the natural father. The State also had information indicating that on one occasion Stephanie herself had named D.C. as the father; the dissolution decree referred to two other children born during the marriage but not to C.W.; and Albert told the State that his military records and other family members would confirm that he was in Germany when C.W. was conceived. Notwithstanding that, there is no indication in this record that the State investigated any of this additional information before proceeding with the Notice and Default Order. That investigation could have included requesting that Albert furnish copies of his military records, obtaining statements from the family members referred to, or even attempting to obtain information from D.C. The technician assigned by the Missouri Division of Child Support Enforcement to Stephanie's case testified that the applications containing the information upon which the State relied were not verified, the only documentation it obtained was the marriage license, and it basically relied on the mother's unsworn statement. Likewise, there is no indication that the State even spoke to Stephanie concerning Albert's allegations or requested a sworn statement from her concerning these matters. We also note that it would have been unavailing for Albert to have requested a hearing in response to the Notice because § 454.485.3 provides that "[i]n no event shall a hearing official conducting a hearing under sections 454.460 to 454.510 be authorized to enter a finding of nonpaternity in the case of a man presumed to be the natural father of any child of legitimate birth under Missouri law...."

The State persisted in this matter notwithstanding the fact that it possessed information which, we believe, together with its failure to make any effort to investigate the sources of other information available to it, caused its position and actions to be less than "clearly reasonable." *See St. Joseph State Hospital v. Soliday,* 861 S.W.2d at 147. Under the particular facts of the instant case, therefore, we believe the record indicates that the State "lacked good faith in taking its position in this litigation." *See Id.*

We are unable to conclude that the judgment ordering the State to pay attorney fees requires reversal under the applicable standard of review. The judgment is, therefore, affirmed.

CROW and PARRISH, JJ., concur.