**GREENBRIAR HILLS COUNTRY CLUB, Appellant,**

v.

**DIRECTOR OF REVENUE, Missouri Department of Revenue, Respondent.**

No. SC 82805.

Supreme Court of Missouri, En Banc.

March 20, 2001.

Rehearing Denied April 24, 2001.

Harvey M. Tettlebaum, Lowell D. Pearson, Terry M. Jarrett, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, for respondent.

WHITE, Judge.

## I.

Greenbriar Hills Country Club (Greenbriar) seeks review of a decision of the Administrative Hearing Commission (AHC) denying its section 536.087 application for reasonable attorney's fees and expenses.[1] Greenbriar incurred these expenses when prevailing in an action against the Director of Revenue (Director) for inappropriately assessing Missouri sales tax upon service charges paid to Greenbriar by its members. We vacate the decision of the AHC for lack of jurisdiction, order reasonable attorney's fees and expenses be awarded to Greenbriar, and order the appointment of a Master for the calculation of the fees and expenses to be assessed against the Director.

A review of the facts and procedural history of this case is instructive. Greenbriar is a country club located in Kirkwood, Missouri, and provides recreational and dining facilities to its members and their guests. Pursuant to 12 C.S.R. 10–3.048(7), Greenbriar exercised the alternative of paying sales tax on its food and beverage purchases as opposed to collecting and remitting tax on its sales of the same. Members, and their guests, were prohibited from tipping its food and beverage staff, and in lieu of these tips, Greenbriar directly billed its members a monthly service charge of $35. The service charges were used exclusively in payment of wages to Greenbriar's food and beverage staff.

The Department of Revenue (Department) assessed Greenbriar a sales tax liability, "plus additions to tax and interest," in the amount of $48,797.45 based upon the Director's determination that Greenbriar's service charges were subject to Missouri sales tax. Greenbriar paid the taxes, but pursuant to section 144.700.2(1) filed a sales use/tax protest affidavit. The Director denied the protest, whereupon Greenbriar filed a petition with the AHC contending that its service charges were exempt from the sales tax pursuant to 12 C.S.R. 10–3.048(7) & (8).

The AHC determined that Greenbriar's service charges were subject to Missouri sales tax; however, it also held that because its decision unforeseeably overruled 12 C.S.R. 10–3.048(7) & (8), Greenbriar was not liable for the assessments. Greenbriar appealed to this Court invoking jurisdiction under Article V, section 3, and on December 17, 1996, in *Greenbriar Hills Country Club v. Director of Revenue*[2] (*Greenbriar I*), the Court reversed the decision of the AHC holding that Greenbriar's service charges were not subject to Missouri sales tax. This decision was based on this Court's determination that Greenbriar's service charges were part of its charges for meals and drinks which were not sold to the general public, but rather exclusively to its own members. Section 144.020(6), and the negative implication derived therefrom, controlled and excluded Greenbriar's service charges from taxation. This decision became final when the time for filing a motion for rehearing, and responses, thereto, expired; i.e. January 2, 1997 as no such motion was filed.

On February 7, 1997, thirty days following the mandate, Greenbriar filed an appli-

1. All statutory citations reference RSMo 1994 unless otherwise indicated.

2. 935 S.W.2d 36, 38–39 (Mo. banc 1996).

cation for reasonable fees and expenses incurred as the prevailing party in the underlying civil action arising from the sales tax proceeding with the Director. Due to the inherent confusion from the wording of section 536.087, Greenbriar filed fee applications in this Court, the Circuit Court of Cole County, and the AHC. On March 25, 1997, this Court overruled Greenbriar's motion.

A hearing on the application filed with the AHC was held on December 17, 1998, and the AHC denied the application.[3] The AHC found that Greenbriar was not entitled to attorney's fees and expenses for failure to demonstrate that the Director's position in the underlying case was not substantially justified as required under section 536.087.2. On January 19, 1999, Greenbriar appealed this denial directly to this Court. In *Greenbriar Hills Country Club v. Director of Revenue*[4] (*Greenbriar II*), this Court held it had no jurisdiction "as section 536.087.7 purports to grant this Court jurisdiction of an appeal beyond and contrary to that authorized by the constitution."[5] Pursuant to Article V, section 11, the cause was transferred to court of appeals.

The court of appeals held that the AHC never had jurisdiction over the application for fees and expenses, thus negating its jurisdiction. The court of appeals determined that the sole entity with jurisdiction was this Court. Upon application, transfer was granted to resolve the jurisdictional issues as well as the merits of Greenbriar's application.

## II.

■ While neither of the parties has raised the issue of jurisdiction, as an initial matter, this Court must establish if it has jurisdiction to rule on an application for reasonable attorney's fees and expenses as provided under section 536.087. This Court is a court of limited jurisdiction, and it has a duty to determine the question of its jurisdiction sua sponte.[6] An examination of the pertinent portions of section 536.087 is necessary to determine if an application for fees and expenses is within the purview of this Court.

■ The underlying case, *Greenbriar I*, was appropriately before this Court under Article V, section 3, because the case involved the construction of the revenue laws of this state. Section 536.087.3 requires the application for fees to be filed in the court, agency, or commission that rendered the final disposition or judgment for the prevailing party. An original application for attorney's fees and expenses timely filed under section 536.087, subsections 1 through 5, is part and parcel of this original cause of action.[7] If it is deter-

3. The record on appeal does not reflect the disposition of Greenbriar's application for fees and expenses filed in the Circuit Court of Cole County.

4. 2 S.W.3d 798 (Mo. banc 1999).

5. Id. at 800.

6. *United Broth. of Carpenters and Joiners of America, Dist. Council, of Kansas City and Vicinity v. Industrial Commission,* 352 S.W.2d 633, 635 (Mo.1962).

7. "An act abrogating sovereign immunity does not create a new cause of action but

provides a remedy for a cause of action already existing for which redress could not be had because of the immunity." *Wilkes v. Mo. Highway and Transp. Comm'n.,* 762 S.W.2d 27, 28 (Mo. banc 1988). There is a significant distinction between the first five subsections of section 536.087 and subsections six and seven. Once fees and expenses are granted, and a determination of those fees is made in the appropriate forum, these later subsections sever an appeal of that determination into a cause of action "separate and apart from the underlying judgment on which the decision is based." Section 536.087.6 and 7. See also *McMahan v. Missouri Department of Social*

mined that Greenbriar prevailed in our Court, jurisdiction on the determination of fees falls within this Court's jurisdiction, and the AHC's decision on Greenbriar's application for fees and expenses will be vacated for lack of jurisdiction.

### III.

Our inquiry, however, only begins with having established that this Court has jurisdiction to entertain a section 536.087 application for attorney's fees and expenses. We must next decide if Greenbriar's application was timely filed under the appropriate statutory scheme. There must also be a determination as to whether the Director should be excused from an assessment of fees and expenses for having been substantially justified in maintaining its legal position during the underlying agency proceeding.

### Section 536.087 v. Section 136.315

■ The Director argues that Greenbriar's application for fees should be denied as it is inappropriately filed under section 536.087. The Director claims that section 136.315 exclusively governs applications for attorney's fees and expenses in tax cases, and that Greenbriar does not fall under the definition of a party under this statute.

Section 536.087 is the general statutory provision allowing non-state parties to recover attorney's fees and expenses from the state when prevailing in agency proceedings. Section 536.087.1 provides:

A party who prevails in an agency proceeding or civil action arising therefrom, brought by or against the state, shall be awarded those reasonable fees and expenses incurred by that party in the civil

action or agency proceeding, unless the court or agency finds that the position of the state was substantially justified or that special circumstances make an award unjust.

A "party," for purposes of this section, is defined in section 536.085.2 and must be:

(a) An individual whose net worth did not exceed two million dollars at the time the civil action or agency proceeding was initiated; or (b) Any owner of an unincorporated business or any partnership, corporation, association, unit of local government or organization, the net worth of which did not exceed seven million dollars at the time the civil action or agency proceeding was initiated, and which had not more than five hundred employees at the time the civil action or agency proceeding was initiated.

In contrast, section 136.315 allows recovery of fees and expenses when prevailing in proceedings "before the administrative hearing commission or a court with respect to a tax imposed under chapter 143, RSMo, or any sales or use tax imposed by chapter 144, RSMo, or section 43(a) of article IV of the Missouri Constitution." This section defines a "party" as:

. . . a natural person or sole proprietorship with a Missouri adjusted gross income of less than seventy-five thousand dollars in each of the two taxable years preceding the date of filing; a corporation or partnership with a federal taxable income of less than one hundred thousand dollars in each of the two taxable years preceding the date of filing; or an association, labor union or not for profit organization with less than fifty employees on the date of filing; provid-

*Services, Div. Of Child Support Enforcement,* 980 S.W.2d 120, 124 (Mo.App.1998). As this Court noted in *Greenbriar II,* it is when this bifurcation occurs that an appeal to this

Court on a determination of fees and expenses has fallen outside of our Constitutional mandate.

ed, however, that a corporation that is a subsidiary or affiliate of a corporation with a federal taxable income of one hundred thousand dollars or more in each of the two taxable years preceding the date of filing is not a "party" under this section.

■ While the Director correctly notes that "[w]hen the same subject matter is addressed in general terms in one statute and in specific terms in another, the more specific controls over the more general," [8] it fails to note that this rule applies only in situations where there is a "necessary repugnancy" between the statutes.[9] There is no conflicting language between these two statutes, nor is there any language indicating intent by the legislature to make these statutes mutually exclusive. In the absence of such an express statement of intent, this Court will not interpret refund statutes as being exclusive.[10] The legislature has clearly provided two remedies, and the taxpayer "cannot be faulted for failing to seek an alternative statutory remedy which the legislature has provided, though the Director deems it preferential." [11]

■ Section 536.087 was enacted six years after section 136.315. The legislature is presumed to know the existing law when enacting a new piece of legislation.[12] Section 536.085 provides an enumerated list of agency proceedings that are excluded from its coverage, and tax cases are not expressly mentioned.[13] Considering the legislature was fully aware of the provisions in section 136.315 when enacting section 536.087, then under the familiar maxim of statutory construction *expressio unius est exclusio alterius*, the legislature must have intentionally omitted tax cases from the excluded proceedings. The legislature identifies a specific class of claimants with section 136.315, and the broader class defined under section 536.087 does not exclude any class of claimants which might overlap between these two statutes.

Greenbriar is a not-for-profit corporation employing less than five hundred employees and with a net worth of less than seven million dollars. Greenbriar had a choice of statutes to pursue its remedy and qualified as a party under section 536.085.2. Greenbriar appropriately invoked section 536.087 when seeking its fees and expenses.

### Timeliness of the Application

■ Alternatively, the Director argues that even if section 536.087 is applicable, Greenbriar's claim should fail for being untimely filed. Section 536.087.3 requires the party prevailing in an agency proceeding, or in a civil action arising from an agency proceeding, to seek the award of fees and expenses within thirty days of the

---

**8.** *Greenbriar Hills Country Club v. Director of Revenue*, 935 S.W.2d 36, 38 (Mo. banc 1996).

**9.** *State ex rel. City of Springfield v. Smith*, 344 Mo. 150, 125 S.W.2d 883, 885 (banc 1939).

**10.** *Director of Revenue v. Westinghouse Credit Corp.*, 787 S.W.2d 715, 717 (Mo. banc 1990).

**11.** Id. at 718.

**12.** *County of Jefferson v. Quiktrip Corp.*, 912 S.W.2d 487, 490 (Mo. banc 1995). See also *Nicolai v. City of St. Louis*, 762 S.W.2d 423, 426 (Mo. banc 1988).

**13.** Section 536.085(1) defines an "agency proceeding" as "an adversary proceeding in a contested case pursuant to this chapter in which the state is represented by counsel, but does not include proceedings for determining the eligibility or entitlement of an individual to a monetary benefit or its equivalent, child custody proceedings, eminent domain proceedings, drivers license proceedings, vehicle registration proceedings, proceedings to establish or fix a rate, or proceedings before the state tax commission."

final disposition or judgment issued by the court, agency, or commission. The Director contends that Greenbriar failed to meet this jurisdictional requirement as it prevailed in its original action against the AHC on April 3, 1996, when the Commission excused the tax liability assessed. Greenbriar did not file its application for fees and expenses until February 7, 1997, after this Court had ruled on Greenbriar's appeal.[14]

■ In order to determine when the thirty-day statutory limit was triggered, it must first be determined what it means to prevail in such a proceeding, and when the final disposition or judgment was issued that made Greenbriar the prevailing party. In a section 536.087 proceeding, a party "prevails" when obtaining "a favorable order, decision, judgment, or dismissal in a civil action or agency proceeding."[15] To "prevail," however, is not limited to favorable judgment following a trial on the merits; it may also include obtaining a settlement, obtaining a voluntary dismissal of a groundless complaint, or obtaining a favorable decision on a single issue if the issue is one of significance to the underlying case.[16]

Contrary to the Director's contentions, Greenbriar did not prevail in the underlying action before the AHC in April of 1996. In the original suit, the AHC held the tax applied to their service charges, and only excused payment because the decision unforeseeably overruled the prior regulations (12 C.S.R. 10–3.048(7) & (8)). Greenbriar contested that the tax was being improperly assessed and did not prevail on this, or any other issue. Greenbriar prevailed when this Court, on appeal, reversed the AHC's decision while construing section 144.020 in a favorable manner to Greenbriar's contentions that its service charges were exempt from the sales tax. A section 536.087.3 application for fees must be filed where the final judgment for the prevailing party is issued, and having determined that Greenbriar prevailed in this Court, the AHC's decision on the application for fees and expenses is vacated for lack of jurisdiction.

■ Section 536.087 starts the thirty-day application clock at the issuance of a final disposition in an agency proceeding or final judgment in a civil action. "A 'final' disposition in an agency proceeding or a civil action occurs whenever the decision disposes of all issues as to all parties and leaves nothing for future determination."[17] For purposes of any decision of this Court, the judgment does not become final until all time has passed for potential motions of rehearing and the rulings thereon. Consequently, the decision in *Greenbriar I*, issued December 17, 1996 technically became final on January 2, 1997. The Court issued its mandate on January 8, 1997. The mandate transmitted the decision to the AHC, and the general rule is that once the mandate of an appellate court is transmitted the Court is divested of its jurisdiction of the cause.[18]

**14.** Failure to request attorney's fees within thirty days of a final disposition in an agency proceeding or a final judgment in a civil action deprives the court or agency of jurisdiction to consider the request. See *Davis and Community Title Co. v. Angoff and the Administrative Hearing Commission*, 957 S.W.2d 340, 343 (Mo.App.1997).

**15.** Section 536.085.3.

**16.** *White v. Missouri Veterinary Medical Board*, 906 S.W.2d 753, 755–56 (Mo.App. 1995).

**17.** *Davis v. Angoff*, 957 S.W.2d 340, 343 (Mo. App.1997). See also *Bolin v. Farmers Alliance Mut. Ins. Co.*, 549 S.W.2d 886, 889 (Mo. banc 1977).

**18.** *Gary Realty Co. v. Swinney*, 317 Mo. 687, 297 S.W. 43, 45 (Banc 1929). See also *State v.*

Greenbriar's application for attorney's fees and expenses was filed on February 7, 1997, or thirty days following the issuance of this Court's mandate. To appropriately acknowledge that the Court no longer had jurisdiction over the cause to entertain the application creates an anomaly not anticipated by the legislature when enacting section 536.087. The confusion generated by the requirements of section 536.087 created a situation where Greenbriar was forced to guess as to where and when to file its application for fees. Had Greenbriar filed its application during the five-day period between January 2, 1997 and January 8, 1997, this Court would unquestionably have had jurisdiction to rule on the application. The legislature intended to give the party seeking fees thirty days to file its application, but apparently failed to consider the effect of requiring the application to be filed after a final determination at the appellate court level. The court of appeals, or this Court, can issue its mandate cutting off the thirty-day time limit well before an unsuspecting party files their application.

This is a case of first impression for this Court. The inherent confusion surrounding the application of this statute is strongly evidenced by Greenbriar's filing their application in three separate forums only six days after the true thirty-day filing period had run and after this Court had divested its jurisdiction. In the interest of equity we will treat Greenbriar's improvidently overruled original application for fees as a motion to recall the Court's mandate in *Greenbriar I*. We sustain the motion and in light of the confusion treat the application as being timely filed.

### Substantial Justification

In addition to filing a timely application, Greenbriar must still allege that the Director's position was not substantially justified or that special circumstances would not make such an award unjust.[19] Missouri courts have interpreted the term "substantially justified" to mean there must be "reasonable basis both in law and fact" for the government's action.[20] The burden is on the Director to establish substantial justification,[21] and the fact that the Director lost on the merits does not create a presumption that the Director's position was not substantially justified.[22] There is no burden for the applicant to prove the Director acted in bad faith when arguing its position.[23]

The Director contends that the Department's position was substantially justified because the regulations cited by Greenbriar for the proposition that no tax was owed were not controlling or binding as a matter of law. According to the Director, these regulations were inconsistent with section 144.020.1(2), and state agencies are required to disregard their promulgated rules if the rules are "plainly inconsistent with the statute."[24] The Director also

*Thompson*, 659 S.W.2d 766, 768 (Mo. banc 1983).

19. Sections 536.087.2 and .3.

20. *Dishman v. Joseph*, 14 S.W.3d 709, 715–17 (Mo.App.2000); and *McMahan v. Missouri Dep't of Social Services*, 980 S.W.2d 120, 125–26 (Mo.App.1998). See also *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

21. *McMahan*, 980 S.W.2d at 126; and *Wadley v. State Dept. of Social Services*, 895 S.W.2d 176, 180 (Mo.App.1995).

22. Section 536.087.3. See also *St. Joseph State Hosp. v. Soliday*, 861 S.W.2d 145, 147 (Mo.App.1993).

23. *Dishman*, 14 S.W.3d at 715–17; and *McMahan*, 980 S.W.2d at 125–26.

24. *Gehrs v. Director of Revenue*, 965 S.W.2d 360, 362 (Mo.App.1998). See also *Brown–*

claims support for the proposition that its position was justified "to a degree that would satisfy a reasonable person," [25] since this Court determined in *Greenbriar I* that, under the facts of the case, section 144.020.1 was "fairly open to two interpretations" and required construction.

The pertinent portions of section 144.020.1 read as follows:

1. A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows:

\* \* \*

(2) A tax equivalent to four percent of the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events;

\* \* \*

(6) A tax equivalent to four percent on the amount of sales or charges for all rooms, meals and drinks furnished at any hotel, motel, tavern, inn, restaurant, eating house, drugstore, dining car, tourist cabin, tourist camp or other place in which rooms, meals or drinks are regularly served to the public.

The applicable rules that were repudiated by the Director remain codified at 12 C.S.R. 10–3.048(7) and (8) and provide:

(7) If a club regularly serves food and beverages to the public, all sales are subject to sales tax on the amount of gross receipts. If a club does not regularly serve food and beverages to the public, other than its members and their guests, and the club acts as a cooperative association for the benefit of its members, the club has the option of either collecting and remitting sales tax on its sales to members and guests or paying sales tax on the club's purchases of food and beverages (see section 144.020.1(6), RSMo).

(8) Involuntary or mandatory gratuities or service charges on food or beverage sales at clubs retain the same character as the underlying sale of food and beverage.

(A) Example: A service charge of twenty percent (20%) is added to all food and beverage sales of a club. If the sales of food and beverage are not subject to sales tax, then the service charge is likewise not subject to sales tax. If the sale of food or beverage is subject to sales tax, then the service charge is subject to sales tax (see section 144.020.1(6), RSMo).

These regulations distinguish the application of section 144.020.1(6) as it applied to clubs serving food and beverages to the public and those only serving its members and their guests. The current versions of 12 C.S.R. 10–3.048(7) and (8) were adopted in 1991; however, the basic premise of these rules dates back to 1949.[26]

---

*Forman Distillers Corp. v. Stewart,* 520 S.W.2d 1 (Mo. banc 1975).

**25.** *Soliday,* 861 S.W.2d at 147.

**26.** In 1949, the Department published Rule No. 46 whereby private clubs were required to pay taxes on their purchases of food and beverages as opposed to their sales. In 1963 identical language appeared in Rule No. 44. In 1975, the Department issued regulations

010–20 captioned "Private Clubs" stating private clubs were subject to sales tax on all sales if made to the general public. By negative implication no tax applied to sales of food and beverages made to their members and guests. At 5 Mo. Register 1439 (No. 12, December 1, 1980) regulation 12 C.S.R. 10–3.048(1) was adopted which was identical to the 1975 provision except it substituted to the word "public" for "general public." The Department amended this regulation in 1986 at

Once the Director disavowed the above clarifying regulations, an obvious conflict surfaced between the application of section 144.020.1's subdivisions. Greenbriar's service charges could arguably be encompassed under subdivision (2), taxes on charges made to a place of amusement by virtue of the "dues" or "gratuity" theories,[27] or under subdivision (6), taxes on charges for meals or drinks regularly served to the public. This Court determined that Greenbriar's service charges were part of the charges made for meals and drinks.[28] By applying well-established rules of statutory construction, the negative implication generated by subdivision (6) excluded the assessment of the sales tax on food and beverages on establishments that do not regularly serve the public, thus also excluding the service charges from taxation.[29]

▆▆ The Director's contention that repudiation of these regulations had no bearing on the legal issues of this case is misplaced. While arguably inconsistent with section 144.020.1(2), the regulations are fully consistent with the tax code section with which they are specifically identified, i.e., section 144.020.1(6).[30] Taxpayers had long benefited from the options offered by these regulations without attempts by the Director to invalidate them. Greenbriar exercised the choice provided by the Director's duly promulgated regulations and elected to pay sales tax on the club's purchases of food and beverages as opposed to collecting and remitting sales tax on its sales to members and guests. The Director had stipulated to this fact prior to the hearing at the AHC, and application of the plain language of these rules results in the conclusion that Greenbriar's service charges, which retained the same character as the underlying sale of food and beverage, were excused from taxation.

▆▆ Greenbriar correctly argues, and the AHC agreed, that there was no reason to expect that the Director would attempt to close what it viewed as a tax loophole by repudiating the long-standing regulations. This unforeseen action on the part of the Director resulted in the AHC

11 Mo. Register 471, 472 (No. 4, February 14, 1986) substituting specific clarification providing "(4) If a private club sells food an beverages only to members and their personal guests, such sales are not subject to the sales tax if the private club paid sales tax on its purchase of the food and beverages from suppliers and if the member is the person paying for the food and beverages purchased." In 1991, 12 CSR 10–3.048 was amended to its current form; adopted at 16 Mo. Register 810 (No. 11, June 3, 1991).

27. The Director had argued to the AHC that these service charges were not gratuities because they were additional charges in lieu of additional dues within a place of amusement in that all members paid them regardless of meal and beverage purchases (the "dues" theory). The Director also contended the charges were not gratuities but simply additional fees subject to the amusement tax (the "gratuity" theory).

28. *Greenbriar*, 935 S.W.2d at 38, citing to, *Oakland Park Inn v. Director of Revenue*, 822 S.W.2d 425, 426 (Mo. banc 1992).

29. Id.

30. While it is true that "[t]axes may be authorized only by statute, and the director may not add to, subtract from, or modify the revenue statutes by regulation" (*Bridge Data Co. v. Director of Revenue*, 794 S.W.2d 204, 207 (Mo. banc 1990), overruled on other grounds), it is also true that "[r]ules of a state administrative agency duly promulgated pursuant to properly delegated authority have the force and effect of law and are binding upon the agency adopting them." *Missouri Nat. Educ. v. Missouri State Bd.*, 695 S.W.2d 894, 897 (Mo. banc 1985), citing *to Page Western, Inc. v. Community Fire Protection District of Saint Louis*, 636 S.W.2d 65, 68 (Mo. banc 1982).

determining that while the tax was assessable against Greenbriar it would not be held liable for it pursuant to section 143.903.[31] This decision could have been made prospectively by the Director negating the need for Greenbriar to incur the expense of litigation. Greenbriar's arguments support the conclusion that from the moment the Director denied Greenbriar's valid tax protest, the Department engaged in the improper process of administrative rulemaking by adjudication.[32]

Agency rulemaking occurs with the formulation, or repeal, of a "statement of general applicability that implements, interprets or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency." [33] Agencies cannot promulgate, or repeal, a rule by an adjudicated order.[34] To repeal a rule, an agency must comply with the notice, publication, and public comment method prescribed in section 536.021 of Missouri's Administrative Procedures Act. Pursuing a major change in Missouri's long-term tax regulations in a quasi-legislative forum inappropriately allowed the Director to bypass the more stringent and lengthy process of rulemaking as required under section 536.021.

This is not a situation where the agency was adjudicating a particular controversy into a precedent and defining policy. The Director's overruling of 12 C.S.R. 10–3.048(7) and (8) amounts to a statement of general applicability implementing or interpreting the law. For the Director to argue that the regulation is only repudiated to the extent it conflicts with the tax statutes, or only to the extent it allowed Greenbriar to purchase food and beverages tax-free, is merely form over substance. Nor does leaving the now defunct regulation on the books successfully clothe the Director's action as merely being a change or refinement in policy.

Section 536.087.3 specifically provides that the determination on the issue of substantial justification shall be based on the record made in the agency proceeding for

31. Section 143.903.1 in pertinent part provides: "... an unexpected decision by or order of a court ... or the administrative hearing commission shall only apply after the most recently ended tax period of the particular class of persons subject to such tax imposed by chapters 143 and 144, RSMo, and any credit, refund or additional assessment shall be only for periods after the most recently ended tax period of such persons." For the purposes of this section the term "unexpected" shall mean that a reasonable person would not have expected the decision or order based on prior law, previous policy or regulation of the department of revenue. See also *Hornsby v. Director of Revenue*, 865 S.W.2d 662, 665 (Mo. banc 1993).

32. This is not to suggest that adjudication of agency policy is incorrect in all situations. " 'Adjudicated cases may and do ... serve as vehicles for the formulation of agency policies, which are applied as announced therein' and ... such cases 'generally provide a guide to action that the agency may be expected to take in future cases.' " *N.L.R.B. v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). In the absence of a statutory restraint the choice whether to develop policy by rule, ad hoc adjudication, or both, rests with the discretion of the administrative agency. *Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Agencies, however cannot promulgate, or repeal, a rule by an adjudicated order. That must be accomplished by the notice, publication and public comment method prescribed by section 536.021. The promulgation of a policy of general applicability is a legislative function and outside the competence of a court or a quasi-court. See *State of Missouri, ex rel. Gulf Transport Co. v. Public Service Commission*, 658 S.W.2d 448, 466–467 (Mo.App.1983).

33. See section 536.010(4).

34. See FN 31 supra.

358

which fees are requested, not on the determination of a higher court when reviewing the agency action for error.[35] The position originally advocated by the Director was that there was no ambiguity with the language of section 144.020.1(2), that Greenbriar's service charges were subject to taxation by virtue of being fees paid to a place of amusement, and that no construction of section 144.020.1 was permissible. This position only became a viable argument upon the Director's selective repudiation of its own validly promulgated regulations, and upon ignoring past case precedent set by this Court. The Director should have recognized the dramatic change being implemented in the tax code, proactively promulgated revisions to its regulations, or at minimum granted Greenbriar's tax protest instead of making Greenbriar bear the cost of its new rule-making through unnecessary litigation.

It was this Court that determined there was an inconsistency between the two subsections of section 144.020.1 that required construction. Only now does the Director argue the ambiguity it formerly denied in an attempt to say the Department's position was reasonable. The Director's so-called "dues" and "gratuity" theories also do little to advance the argument that the service charges were subject to sales tax as being fees paid to a place of amusement. The Director stipulated to the fact that the service charges were used exclusively to cover tipping for food and beverage services, and this Court had previously provided guidance that such charges are considered part of the charges for meals and drinks when factored into the tax code.[36] Moreover, to argue that the Director must be left room to advance novel, though credible, theories of law,[37] does not support an extreme departure from long-standing rules implemented by means of a retroactive tax assessment. The Director failed to meet the burden of establishing that the Department's position in the original AHC proceeding had a reasonable basis in fact and law. An award of reasonable attorney's fees and expenses is warranted under section 536.087.

## IV.

The purpose of section 536.087 is "to require agencies to carefully scrutinize agency and court proceedings and to increase accountability of the administrative agencies."[38] Section 536.087 was modeled after the federal Equal Access to Justice Act (EAJA), 28 U.S.C. Section 2412 (1982), and the legislative history of the EAJA is described in *Spencer v. NLRB*.[39] The *Spencer* court stated that "awarding attorney's fees to private parties who successfully challenge governmental departures from established policy would both foster the 'refinement' of the administration of the law and provide a valuable deterrent to officials contemplating making gratuitous exceptions to general rules."[40] Missouri courts have adopted the same rational for justifying the fee-shifting provisions of section 536.087 by awarding litigation fees to encourage private parties to challenge unreasonable government behavior.[41]

35. Section 536.087.3. See also *Dishman*, 14 S.W.3d at 717.

36. *Oakland Park Inn*, 822 S.W.2d at 426.

37. *Melahn v. Otto*, 836 S.W.2d 525, 528 (Mo. App.1992).

38. *White*, 906 S.W.2d at 755.

39. 712 F.2d 539 (D.C.Cir.1983), cert. denied, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

40. Id. at 560–61.

41. "It is reasonable to ask the state through its tax dollar to finance those contests where public policy is formulated." *State Board of*

We vacate the decision of the AHC for lack of jurisdiction, recall the mandate issued in *Greenbriar I*, order reasonable attorney's fees and expenses be awarded to Greenbriar, and order the appointment of a Master for a calculation of the fees and expenses to be assessed against the Director.[42]

PRICE, C.J., and LIMBAUGH, J., and AUTREY and WALLACE, Sp.JJ., concur.

WOLFF, J., dissents in separate opinion filed.

HOLSTEIN, BENTON and STITH, JJ., not participating.

WOLFF, Judge, dissenting.

Section 536.087.1[1] allows attorneys' fees and expenses in an action against the state "unless the court ... finds that the position of the state was substantially justified...." I believe that this Court's decision in *Greenbriar Hills Country Club v. Director of Revenue*, 935 S.W.2d 36 (Mo. banc 1996), *Greenbriar Hills I*, which exempted the country club's retail charges for meals and drinks from sales tax as not being sold to the public, was incorrect.

Accordingly, the state's position was substantially justified. I respectfully dissent.

*Greenbriar Hills I* purports to find, within the same section of the sales tax statute, a "conflict" that is resolved by deferring to the more specific of the two subdivisions that allegedly are in conflict. The pertinent portions of the statute, section 144.020.1, are as follows:

1. A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows:

\* \* \*

(2) A tax equivalent to four percent of the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events;

\* \* \*

(6) A tax equivalent to four percent on the amount of sales or charges for all rooms, meals and drinks furnished at

---

*Registration for the Healing Arts v. Warren,* 820 S.W.2d 564, 565 (Mo.App.1991). Section 536.087 has a broad public policy purpose "to ensure the legitimacy and fairness of government and the law so that contests between private citizens and the government are decided on the merits of the matter and not on the costs." *Wadley v. State Dept. of Social Services,* 895 S.W.2d 176, 178–79 (Mo.App. 1995), overruled in part on other grounds. The statute intended "to encourage relatively impecunious private parties to challenge abusive or unreasonable government behavior by relieving such parties of the fear of incurring large litigation expenses." *White,* 906 S.W.2d at 755. See also *Comm., Immigr. and Natur. Serv. v. Jean,* 496 U.S. 154, 163, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

**42.** Reasonable fees and expenses are to be calculated under the statutory guidelines outlined in section 536.085(4). In *Hernandez v.*

*State Bd. of Registration for the Healing Arts,* it was determined that attorney's fees incurred in seeking attorney's fees for an underlying civil action or agency proceeding were also recoverable under section 536.087, and "[r]efusing to award attorney's fees for the time spent obtaining attorney's fees for the underlying agency proceeding or civil action would thwart the purpose of section 536.087." *Hernandez v. State Bd. of Registration for the Healing Arts* 936 S.W.2d 894, 901–02 (Mo. App.1997); accord *State ex. rel. Div. of Transp. v. Sure–Way Transp., Inc.,* 948 S.W.2d 651, 657 (Mo.App.1997). Greenbriar will also be entitled to reasonable fees and expenses incurred in defending the fee award should an appeal of the fee determination ensue. *Sure–Way,* 948 S.W.2d at 658.

**1.** All statutory references are to RSMo 2000, unless otherwise indicated.

360

any hotel, motel, tavern, inn, restaurant, eating house, drugstore, dining car, tourist cabin, tourist camp or other place in which rooms, meals or drinks are regularly served to the public.

The alleged conflict was between subdivision (2), which levies a tax on "fees paid to, or in any place of amusement"—which undoubtedly describes a country club—and subdivision (6), which imposes a sales tax on the amount of sales or charges for meals and drinks at a place where meals or drinks "are regularly served to the public." *St. Louis Country Club v. Administrative Hearing Com'n,* 657 S.W.2d 614, 617 (Mo. banc 1983). Finding that subdivision (6) is more specific than subdivision (2), the Court held that such sales are not subject to the tax.

The Court, in *Greenbriar Hills I,* relied on the rule of statutory construction that states "when the subject matter is addressed in general terms in one statute and in specific terms in another, the more specific controls over the more general" in making its determination that country club sales are not subject to sales tax. 935 S.W.2d 36, 38 (Mo. banc 1996). It cited *Terminal R.R. Assn. of St. Louis v. City of Brentwood,* 360 Mo. 777, 230 S.W.2d 768, 769 (1950), for its use of the rule to what it found to be two conflicting subdivisions within one statute. Though *Terminal R.R. Assn. of St. Louis* stands for such usage, the plain language of the rule seems logically to limit its use to when two separate statutes conflict. Such a case could arise when one statute is enacted at a later date than another and the later one is more specific. When the statute that deals with the subject in a more definite way is later in time to the more general statute, the later, more specific statute is regarded as a qualification or exception to the prior general statute. *State ex rel. McKittrick v. Carolene Products Co.,* 346 Mo. 1049, 144 S.W.2d 153, 156 (Mo. banc 1940). This rule of construction, though in rare instances applied to conflicting subsections within the same statute, should be used sparingly, and only after the subsections have been thoroughly reviewed and a conflict is clearly established.

In the present statute there is no clear conflict. There is no question that the country club sales are sales at retail. *City of Springfield v. Director of Revenue,* 659 S.W.2d 782, 785 (Mo. banc 1983); *St. Louis Country Club,* 657 S.W.2d at 617–19. But are such sales to the public? But just because the country club is open only to its own members, and presumably to their nonmember guests, does that exclude such members and guests as members of the public? Where, after all, does a country club get its members except from the public?

The unsoundness of the Court's conclusion can be illustrated by hypothesizing the existence of a store that sells merchandise at retail, but only to members of its "club." A member of the public can become a member of the "club" by filling out an application and paying a membership fee. Does that mean that the club is private and the sales to its members are not subject to the sales tax for retail sales?

Perhaps the difference between the hypothetical club and a country club is that the latter may have a more elaborate process for choosing its members. Prospective members might be excluded on grounds of occupational status, race, religion, ethnicity, inadequacy or recency of wealth, or other factors protected by freedom of association. That is an interesting distinction, to be sure, but not a distinction that is satisfactory in interpreting sales tax statutes.

For purposes of anti-discrimination laws, "places of public accommodation" are

elaborately defined in section 213.010.[2] Quite specifically, in the statute that forbids discrimination in places of public accommodation, section 213.065 contains a specific exclusion for private clubs. Despite the definition in section 213.010, the exclusion explicitly states that the anti-discrimination provisions as to public accommodations "shall not apply to a private club, a place of accommodation owned by or operated on behalf of a religious corporation, association or society, or other establishment which is not in fact open to the public...." The language just quoted either is unnecessary or there is something about the word "public" that does not necessarily exclude a "private" club.

If there is to be an exclusion from sales tax for laws for private clubs, the exclusion should be as explicit as that in the anti-discrimination laws. What this Court has done in *Greenbriar Hills I* is to conclude that sales to the "public" do not include sales to a club's members. The Court's decision assumes there are two categories, public and private, and that they are mutually exclusive. From this supposed con-

flict the Court concludes that the tax on fees charged by places of amusement or recreation, imposed by section 144.020.1(2), is less specific and thus does not apply.

When the sales tax law is interpreted to favor private clubs, it disfavors patrons who buy meals at retail at non-favored establishments. The treatment for sales tax purposes should be the same whether one eats at the country club or a local diner. We should not infer that the legislature, in enacting section 144.020.1, intended to shift the burden of taxation from country club members to patrons of diners.

Even if country clubs are excluded from section 144.020.1(6) as not selling to the "public," there is no conflict with section 144.020.1(2) which taxes places of amusement or recreation. The real question is whether country clubs are covered in any part of the section, and they are clearly covered in section 144.020.1(2), and their sales are subject to the sales tax.

I believe the Court should revisit and overrule its decision in *Greenbriar Hills I* and its progeny, *Westwood Country Club*

2. "Places of public accommodation", all places or businesses offering or holding out to the general public, goods, services, privileges, facilities, advantages or accommodations for the peace, comfort, health, welfare and safety of the general public or such public places providing food, shelter, recreation and amusement, including, but not limited to:

    (a) Any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;

    (b) Any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment;

    (c) Any gasoline station, including all facilities located on the premises of such gasoline station and made available to the patrons thereof;

    (d) Any motion picture house, theater, concert hall, sports arena, stadium, or other place of exhibition or entertainment;

    (e) Any public facility owned, operated, or managed by or on behalf of this state or any agency or subdivision thereof, or any public corporation; and any such facility supported in whole or in part by public funds;

    (f) Any establishment which is physically located within the premises of any establishment otherwise covered by this section or within the premises of which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment;

*v. Director of Revenue*, 6 S.W.3d 885 (Mo. banc 1999), which I wrote and followed the error of *Greenbriar Hills I*—an error that should not be perpetuated. I believe that the state's position in this litigation is substantially justified, and I would not compound our error by awarding attorneys' fees. I respectfully dissent.