

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

MISSOURI DEPARTMENT OF )
HEALTH AND SENIOR SERVICES, )
                                )
              Appellant, )
                                )
v. )      WD87223
                                )
REPRODUCTIVE HEALTH )      Opinion filed:  September 16, 2025
SERVICES OF PLANNED )
PARENTHOOD OF THE ST. LOUIS )
REGION, )
                                )
            Respondent. )

**APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY, MISSOURI**
**HONORABLE JON E. BEETEM, JUDGE**

Division Two:  Lisa White Hardwick, Presiding Judge,
Edward R. Ardini, Jr., Judge and W. Douglas Thomson, Judge

This appeal is about attorney's fees and expenses under section 536.087, RSMo,[1] the statutory provision allowing a party to recover fees and expenses when prevailing in agency proceedings against the state. This statute permits a prevailing party to recover the reasonable fees and expenses incurred, unless the state's position was substantially justified or special circumstances make an award of fees and expenses unjust.

---

[1] All references to the Revised Statutes of Missouri are to the 2016 edition, unless otherwise noted.

In 2019, the Missouri Department of Health and Senior Services ("the Department") denied the application of Reproductive Health Services of Planned Parenthood of the St. Louis Region ("RHS") to renew its abortion facility license. RHS appealed the decision by filing a complaint with the Administrative Hearing Commission ("the AHC"). After a four-day hearing, the AHC issued a ninety-seven-page decision reversing the Department, finding that RHS was entitled to renewal of its license. The Department did not appeal.

RHS filed a complaint with the AHC, seeking attorney's fees and expenses pursuant to section 536.087. The AHC determined that RHS was entitled to attorney's fees and expenses under the statute, however RHS could not recover all expenses requested. Both RHS and the Department appealed to the Circuit Court of Cole County ("the trial court"). The trial court found in favor of RHS, concluding RHS qualified for fees and expenses under the statute and the AHC erred in determining that RHS could not recover certain expenses. The trial court remanded the action to the AHC to decide whether the expenses claimed by RHS were reasonable, and on remand, the AHC found that they were. The Department appealed to the trial court, and the trial court affirmed the AHC's decision.

The Department appeals—which is the present appeal—asserting RHS was not entitled to attorney's fees and expenses under section 536.087 because RHS was not a "party" as that term is defined by statute, RHS did not incur fees and expenses, the Department's position was substantially justified, and special circumstances existed that made the award unjust. For the reasons stated below, we affirm the trial court's judgment affirming the decision of the AHC awarding RHS attorney's fees and expenses. We also

remand this matter to the trial court with directions to remand to the AHC to determine the proper amount of fees and expenses to be awarded to RHS in defending this appeal.

## Factual and Procedural Background

*The underlying action involving*
*RHS's license renewal ("the merits action")*

In 2019, RHS operated an abortion facility in St. Louis; it was the only abortion facility in Missouri. An abortion facility must have a license from the Department to operate, and licenses are renewed annually. RHS's annual license expired on May 31 of each year.

As relevant here, the Department may deny renewal of an abortion facility license if it finds a "substantial failure" to comply with the requirements of sections 197.200 through 197.240. *See* § 197.220, RSMo Supp. 2017. To determine a facility's eligibility for renewal, the Department conducts licensure inspections. The term "inspection" refers to the annual process where a survey team from the Department goes to a facility to determine compliance. An "investigation" refers to a limited review of a particular area of concern identified with a facility; it also involves a visit from Department surveyors to determine compliance.

Within ten business days after an inspection or investigation, the Department delivers a "statement of deficiencies" to the facility. The facility then must submit a "plan of correction" addressing the Department's concerns. The facility must respond to each identified deficiency with details of how the facility plans to correct it. The Department

either accepts or rejects the plan. If the plan is rejected, the facility has an opportunity to revise it. This process may repeat several times.

In January and February of 2019, the Department initiated two "internal complaint investigations" of RHS—meaning the complaints were made by someone in the Department—and conducted on-site inspections. Both investigations revealed no wrongdoing.

On March 11, 2019, five Department surveyors arrived at RHS to conduct its annual licensure inspection. The inspection lasted three days. The surveyors reviewed records and conducted interviews. Later that month, the Department submitted to RHS its first statement of deficiencies. In preparing this statement, the Department identified an issue relating to RHS's treatment of Patient 1. However, the Department did not cite RHS for this deficiency, and instead opened an internal complaint investigation.

In its investigation into the issue with Patient 1, the Department requested physicians' personal phone numbers and demanded they be interviewed in a specific order. The Department refused to provide any context for the investigation. Two physicians and a nurse agreed to be interviewed; the Department refused the offers because they were not in the desired order. The other physicians refused the interview requests on the advice of legal counsel.

Meanwhile, RHS submitted its plan of correction for the statement of deficiencies. The Department denied RHS's plan of correction and warned that the Department could not complete its investigation without physician interviews. RHS submitted a revised plan of correction. The Department accepted RHS's plan for correction of certain deficiencies,

4

but not others. The Department again repeated its demand to conduct physician interviews in a particular order. Ultimately, the Department relented and agreed to interview the physicians who had offered to be interviewed.

As previously noted, RHS's annual license expired on May 31 of each year. On May 28, 2019, RHS filed a lawsuit in circuit court to maintain its license. The circuit court issued a temporary restraining order preventing RHS's license from expiring.

On June 13, 2019, the Department sent a letter to RHS attaching the Department's final statement of deficiencies. The Department identified what it claimed were "at least 30 deficient practices," and, in its letter, "highlight[ed] several" of what it contended were "the most serious deficiencies" that "rais[ed] particular concerns." Five days later, RHS submitted a plan of correction. On June 21, 2019, the Department delivered a letter to RHS denying its renewal application. The Department accepted RHS's plan of correction for certain deficiencies, but considered the remaining deficiencies unresolved.

On June 24, 2019, RHS filed a complaint with the AHC, appealing the Department's denial of its renewal application.[2] In October 2019, the AHC conducted a four-day hearing, at which the parties presented numerous exhibits and the testimony of five expert witnesses.

Thereafter, the AHC issued its decision reversing the Department's denial of RHS's application for license renewal. The decision was ninety-seven pages long; it contained

---

[2] RHS's license remained in effect pending the AHC's decision by virtue of a stay order issued by the AHC.

three hundred findings of fact and credibility determinations, and extensive legal analysis.

The AHC summarized its decision as follows:

> Our review of the record reflects only two instances where [RHS] failed to comply with the requirements of §§ 197.200 to 197.240. [RHS] failed to file a complication report for Patient 1 as required by § 188.052.2, 19 CSR 10-15.020, and 19 CSR 30-30.060(3)(H); and [RHS] failed to document the action the facility took regarding Staff B's treatment of Patient 2 in violation of 19 CSR 30-30.060(8)(C). We found that those violations, individually, did not constitute a *substantial* failure to comply with §§ 197.200 to 197.240, as is required to deny [RHS's] license renewal under § 197.200.
>
> Considering these two violations together, we reach the same conclusion. [RHS] has demonstrated that it provides safe and legal abortion care. In over 4,000 abortions provided since 2018, the Department has only identified two causes to deny its license. As such, we determine that [RHS] has substantially complied with §§ 197.200 to 197.400 [sic]. Therefore, [RHS] is entitled to renewal of its abortion facility license.

The Department did not appeal.

*RHS's action for attorney's fees and expenses*
*("the fees action")*

RHS filed a complaint with the AHC, seeking fees and expenses under section 536.087, which provides that "[a] party who prevails in an agency proceeding . . . brought by or against the state, shall be awarded those reasonable fees and expenses incurred by that party" unless the "agency finds that the position of the state was substantially justified or that special circumstances make an award unjust." § 536.087.1. The Department filed an answer contesting that RHS was entitled to fees and expenses under the statute.

RHS filed a motion for summary decision. The Department filed a response, asserting RHS was not entitled to fees and expenses for three reasons relevant to this appeal. First, the Department claimed RHS was not a "party" as that term is defined by

statute, and if RHS were deemed a "party," then entities other than RHS incurred the fees and expenses sought (namely, other Planned Parenthood entities). Second, the Department asserted that its position in the merits action was substantially justified. Third, the Department claimed special circumstances made an award of fees and expenses unjust.

The AHC rejected the Department's arguments and entered a decision awarding RHS attorney's fees, agent fees, and expert witness fees. The AHC found, however, that RHS was not entitled to the expenses it sought. The AHC determined that RHS "failed to establish its ancillary costs (travel, food, depositions, etc.) were based 'upon prevailing market rates,'"[3] and thus RHS was not entitled to an award of those expenses. Thereafter, the AHC entered an amended decision additionally awarding RHS the fees and expenses incurred in litigating the fees action.

Both RHS and the Department appealed by filing petitions for judicial review with the trial court. We refer to this action as "the 21AC action," as it was assigned a case number beginning with 21AC.[4] The trial court entered judgment in favor of RHS and against the Department. The trial court concluded that the AHC did not err in finding (1)

---

[3] "Reasonable fees and expenses" is defined in section 536.085(4). In relevant part, the definition provides: "The amount of fees awarded as reasonable fees and expenses shall be based upon prevailing market rates for the kind and quality of the services furnished, except that no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the state in the type of civil action or agency proceeding, and attorney fees shall not be awarded in excess of seventy-five dollars per hour unless the court determines that a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee[.]"

[4] There were actually two case numbers assigned—one for each appeal—but they were consolidated under the lower case number.

RHS was a "party" that "incurred" fees, (2) the Department's position was not substantially justified, and (3) no special circumstances existed that made the award of fees and expenses unjust. The trial court found the AHC did err, however, in its determination on RHS's request for expenses. The trial court concluded that while "the *fees* portion of a 'reasonable fees and expenses' award must be based on the prevailing market rate," the "only limitation on expenses is that they be 'reasonable.'" The trial court vacated the AHC's decision with respect to RHS's expenses and remanded the matter for a determination as to whether RHS's expenses were reasonable. In all other respects, the AHC's decision was affirmed.[5]

The Department appealed to this Court. RHS moved to dismiss the appeal, arguing that because the trial court remanded the action to the AHC, there was no final judgment and we lacked jurisdiction to hear the appeal. We granted the motion and dismissed the appeal.

On remand, the parties submitted a Joint Proposed Second Amended Decision, in which they stipulated that the expenses incurred in the merits action were reasonable, but the Department reserved its right to appeal all other issues (including, but not limited to, substantial justification, that RHS was not entitled to fees and expenses, and that RHS did not "incur" those expenses). Based on this stipulation, the AHC issued its "Decision on Remand" finding RHS was entitled to the expenses sought in the merits action. Moreover, in its decision, the AHC "incorporate[d] by reference all findings from [its] amended

---

[5] The trial court also ordered the Department pay RHS the reasonable fees and expenses it incurred in the 21AC action.

8

decision [in the fees action] except for the findings related to the reasonableness of [RHS's] expenses," and attached the amended decision to its Decision on Remand.

The Department appealed to the trial court by filing a petition for judicial review. We refer to this as "the 23AC action" because it was assigned a case number beginning with 23AC. In its petition for judicial review, the Department did not challenge the findings in the Decision on Remand related to the "reasonableness" of expenses. Rather, the Department raised the same issues it had previously raised—and the trial court had decided—in the 21AC action. The Department asserted to the trial court that it had two options: "(1) reconsider its previous decision or (2) enter a final order adopting [its] previous conclusions so that [its] order becomes final and appealable."

The trial court entered judgment affirming the AHC's Decision on Remand. In doing so, it stated: "This Court does not reconsider its [Judgment] in [the 21AC action], and that Judgment stands as previously entered and is incorporated by reference herein to the extent necessary."[6]

The Department appeals.

**Standard of Review**

We review the AHC's decision granting attorney's fees and expenses, not the trial court's judgment affirming that decision. *See Mo. Real Est. Appraisers Comm'n v. Funk*, 492 S.W.3d 586, 592 (Mo. banc 2016) ("When a party appeals a circuit court's judgment reviewing an agency decision, the appellate court does not review the circuit court's

---

[6] The trial court also ordered the Department pay RHS the reasonable fees and expenses it incurred in the 23AC action.

decision, but rather the agency decision, that is, the AHC's findings and conclusions." (internal marks omitted)). Section 536.087 sets forth our review of the AHC's decision, and provides in relevant part:

> The court may modify, reverse or reverse and remand the determination of fees and other expenses if the court finds that the award or failure to make an award of fees and other expenses, or the calculation of the amount of the award, was arbitrary and capricious, was unreasonable, was unsupported by competent and substantial evidence, or was made contrary to law or in excess of the court's or agency's jurisdiction.

§ 536.087.7. This is the standard we apply, even when the determination of fees and expenses was made on a motion for summary decision. *Cf. MO CANN Do, Inc. v. Mo. Dep't of Health & Senior Servs.*, 686 S.W.3d 642, 645-47 (Mo. banc 2024) (reviewing AHC's grant of summary decision to determine if it was supported by competent and substantial evidence or was arbitrary, capricious, or unreasonable). We review *de novo* "any questions of law raised by the application [for attorney's fees], including questions as to statutory interpretations." *Garland v. Ruhl*, 455 S.W.3d 442, 446 (Mo. banc 2015).

**Analysis**

The Department raises four points, which we address out of order for ease of analysis. Before reaching these points, however, we first address RHS's request that we dismiss this appeal. RHS asserts the appeal should be dismissed for two reasons.

RHS first asserts that we lack jurisdiction to hear this appeal due to the Department's failure to consolidate the 23AC action with the 21AC action. RHS contends that the issues raised by the Department in this appeal (relating to RHS's entitlement to fees and expenses) were decided by the AHC and reviewed by the trial court in the 21AC action, but the

10

present appeal is not from the 21AC judgment. RHS asserts that the present appeal is from the 23AC judgment, which only involved the "reasonableness" of the expenses incurred, an issue the Department does not challenge on appeal. RHS argues that "this Court lacks jurisdiction to hear an appeal from the 21AC Judgment, which, in reality, contains the only substantive issues [the Department] seeks to appeal."

We disagree with RHS, and find we have jurisdiction. This is an appeal from the 23AC judgment. But the 23AC judgment expressly incorporated the trial court's previous findings and determinations from the 21AC judgment, *i.e.*, the findings relating to RHS's entitlement to fees and expenses. Moreover, the 23AC action reviewed the AHC's Decision on Remand, and the Decision on Remand, too, expressly incorporated its previous findings relating to RHS's entitlement to fees and expenses. This issue—RHS's entitlement to fees and expenses—was finally resolved in the Decision on Remand and 23AC judgment. We thus have jurisdiction to hear this appeal, notwithstanding the Department's failure to consolidate the 21AC and 23AC actions.

RHS next argues the appeal should be dismissed because the Department's points relied on fail to comply with Rule 84.04, and therefore preserve nothing for review. We agree that the Department's points—which assert the *trial court* erred, not the AHC— violate Rule 84.04.

As noted above in our standard of review, "[w]hen a party appeals a circuit court's judgment reviewing an agency decision, the appellate court does not review the circuit court's decision, but rather the agency decision, that is, the AHC's findings and conclusions." *Funk*, 492 S.W.3d at 592 (internal marks omitted)). However each of the

11

Department's points claims "the trial court erred," and thus requests we review the trial court's judgment. Rule 84.04(d) governs points relied on and sets forth—in different subsections—the format and requirements for points seeking review of trial court error (*see* Rule 84.04(d)(1)) and points seeking review of an administrative decision (*see* Rule 84.04(d)(2)). In this appeal, Rule 84.04(d)(2) governs. *See Lexow v. Boeing Co.*, 643 S.W.3d 501, 507 (Mo. banc 2022) (Rule 84.04(d)(2) governed review of administrative decision). Thus by claiming *trial court* error, the Department's points violate Rule 84.04(d)(2). *See Guthrie v. Mo. Dep't of Lab. & Indus. Rels.*, 503 S.W.3d 261, 265 (Mo. App. W.D. 2016) ("Guthrie's points on appeal violate Rule 84.04(d)(2), in that they focus upon arguments related to *circuit court* rulings rather than challenged *AHC* rulings").

The Department argues that "[i]n a case like this, the appellate court reviews the circuit court's decision," and thus Rule 84.04(d)(1) applies. To support this contention, the Department relies on the fact that, when reviewing an agency decision, we nonetheless reverse, affirm, or otherwise act upon the judgment of the circuit court. The Department's argument ignores—and is wholly inconsistent with—the magnitude of appellate opinions explaining that, while we must affirm, reverse, or otherwise act upon the trial court's judgment, *see* Rule 84.14,[7] we review *only* the administrative decision, and the appellant bears the burden of demonstrating the *administrative decision* was erroneous. *See, e.g.*, *Bird v. Mo. Bd. of Architects, Pro. Eng'rs, Pro. Land Surveyors & Landscape Architects*, 259 S.W.3d 516, 520 & n.7 (Mo. banc 2008) ("When a circuit court's judgment is appealed,

---

[7] "The appellate court shall . . . reverse or affirm the judgment or order of the trial court . . . ." Rule 84.14.

the appellate court does not review the circuit court's decision, but rather the agency decision"; however, "[w]hile the decision reviewed on appeal is that of the AHC and not the circuit court, an appellate court reverses, affirms or otherwise acts upon the judgment of the trial court." (citing Rule 84.14)); *Casnocha-Jones v. State Bd. of Nursing*, 686 S.W.3d 695, 704 (Mo. App. W.D. 2024) ("this court reviews the agency's decision and not the circuit court's judgment" and the party aggrieved by the agency's decision "bears the burden to show that the agency erred in the first instance"; however, "we affirm or reverse the trial court's judgment based upon such review of the administrative decision"); *Beckemeyer v. Firemen's Ret. Sys. of St. Louis*, 424 S.W.3d 1, 4 (Mo. App. E.D. 2013) ("[W]e review the administrative agency's decision and not the judgment of the trial court. Nevertheless, in our mandate, we reverse, affirm or otherwise act upon the trial court's judgment." (internal citation omitted)).

Based on the Department's violation of Rule 84.04(d)(2), we could dismiss this appeal. *See Guthrie*, 503 S.W.3d at 265-66 (finding that violation of Rule 84.04(d)(2) warranted dismissal of the appeal, but exercising discretion to review the substance of the claim). Or we could decline to address the Department's points and affirm the AHC's decision. *See Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 123 (Mo. App. W.D. 2001) (declining to address the appellant's points that—in violation of Rule 84.04(d)(2)— challenged actions of the trial court instead of the administrative decision). However, given our preference for deciding cases on the merits, we will consider the Department's arguments on appeal to the extent they relate to determinations made by the AHC. Any arguments attacking language in the trial court's judgment will not be addressed.

*RHS was a "party"*

In its second point, the Department contends RHS was not a "party" as that term is defined by statute, and therefore may not be awarded fees and expenses under section 536.087. We disagree.

Section 536.085 defines who is a "party." A corporation is a "party" if its net worth did not exceed seven million dollars and it did not have more than five hundred employees when the agency proceeding was initiated. *See* § 536.085(2)(b). The Department argued before the AHC that RHS's net worth exceeded seven million dollars when aggregated with that of Planned Parenthood Federation of America ("PPFA") and Planned Parenthood of the St. Louis Region and Southwest Missouri ("PPSLR"). The Department contended that "the corporate distinctions between RHS and PPSLR, and between RHS and PPFA, are illusory" and "any distinction between the entities is entirely fictional," thus the AHC should "pierce the corporate veil" and aggregate the net worth of these three entities.

The AHC found that, at all relevant times, RHS's net worth did not exceed seven million dollars and it did not have more than five hundred employees, and thus RHS was a "party." The AHC concluded that it could not aggregate RHS's net worth with other entities, because "[t]he plain text of §§ 536.085 and 536.087 contains no indication that we may look any further than the net worth of the specific legal entity seeking attorney fees," contrasting the statutes with section 136.315 governing tax disputes, which provides for aggregation of corporate affiliates' taxable income in determining whether the corporation is a "party" that can recover litigation expenses.

14

The AHC did not address the Department's "piercing-the-corporate-veil" argument in its decision; however, it did address—and reject—the argument in its earlier order denying the Department's motion to compel discovery in the fees action. The AHC concluded that (1) piercing the corporate veil is an equitable claim, and as an administrative agency, it had no authority to apply equitable doctrines, and (2) even if the AHC had equitable powers, the Department failed to show the necessary elements to pierce the corporate veil.

We find the AHC did not err in refusing to consider the net worth of other entities when determining whether RHS was a "party."

First, sections 536.085 and 536.087 do not permit the aggregation of corporate affiliates' net worth in determining party status. There is no language in these statutes providing for aggregation. These sections are thus unlike section 136.315, which allows for recovery of fees and expenses to prevailing parties in tax disputes before the AHC, and which expressly provides for consideration of corporate affiliates' income in determining who is a "party" entitled to fees and expenses.[8] Sections 536.085 and 536.087 were "enacted six years after section 136.315." *Greenbriar Hills Country Club v. Dir. of Revenue*, 47 S.W.3d 346, 352 (Mo. banc 2001). "The legislature is presumed to know the existing law when enacting a new piece of legislation." *Id.* Given that the legislature was

---

[8] In relevant part, section 136.315 defines a "party" as "a corporation or partnership with a federal taxable income of less than one hundred thousand dollars in each of the two taxable years preceding the date of filing . . . ; provided, however, that a corporation that is a subsidiary or affiliate of a corporation with a federal taxable income of one hundred thousand dollars or more in each of the two taxable years preceding the date of filing is not a 'party' under this section[.]" § 136.315.1(1).

"fully aware of the provisions in section 136.315 when enacting" sections 536.085 and 536.087, *see id.*, and failed to expressly provide for aggregation in these sections as it did in section 136.315, we find the legislature did not intend to allow for aggregation when determining party status under sections 536.085 and 536.087.

The Department argues that section 136.315 is an "unrelated statute, in a different section of the Missouri codes," and thus "does not bear on what §§ 536.085-.087 permit." The Department contends that statutes are read together only when they relate to the same subject matter and are found in the same chapter or passed in the same bill. The Department is incorrect. The doctrine of "*in pari materia*"—meaning "upon the same matter or subject"—"requires that statutes relating to the same subject matter be construed together even though the statutes are found in different chapters and were enacted at different times." *State ex rel. Dir. of Revenue v. Gaertner*, 32 S.W.3d 564, 566 (Mo. banc 2000). The Department is also incorrect in arguing that section 136.315 does not relate to the same subject matter as sections 536.085 and 536.087: they both allow for a party prevailing before a court or the AHC to recover fees and expenses, as long as the position of the state was not substantially justified, and they both define when a corporation is a "party" that may recover based on financial considerations. *See also Greenbriar Hills Country Club*, 47 S.W.3d at 352 (comparing the language of these three statutes in construing their meaning).

Second, we find no error in the AHC's refusal to aggregate RHS's net worth with that of PPSLR and PPFA under the theory of "piercing the corporate veil." "Piercing the corporate veil is an equitable doctrine used by the courts to look past the corporate form

16

and impose liability upon the owners of the corporation—be they individuals or other corporations—when the owners create or use the corporate form to accomplish a fraud, injustice, or some unlawful purpose." *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 375 (Mo. App. E.D. 2014). Thus to pierce the corporate veil, a plaintiff must establish three elements: (1) the owners' complete control over the corporation (2) which is used to commit a wrongdoing (3) that proximately causes the plaintiff's injury. *State ex rel. Family Support Div. v. Steak'm Take'm LLC*, 524 S.W.3d 584, 593 (Mo. App. W.D. 2017) (citing *66, Inc. v. Crestwood Commons Redev. Corp.*, 998 S.W.2d 32, 40 (Mo. banc 1999)).

In arguing for application of this doctrine before the AHC, the Department focused almost entirely on the first element—control—asserting RHS was "dominated by" PPSLR and PPFA. But even assuming *arguendo* the Department sufficiently demonstrated the control element, it failed to establish the other two elements necessary to pierce the corporate veil. *See Blanks*, 450 S.W.3d at 376 ("merely showing that one has absolute control of a corporation does not of itself justify piercing the corporate veil"). As to the second element (wrongdoing), the Department offered only speculation that evidence "may show that RHS's corporate separateness is a sham" or may show that "PPSLR keeps RHS undercapitalized to prevent recovery under medical malpractice suits . . . or for RHS to threaten fee suits against regulators." The Department did not even attempt to argue the

17

third element (cause of injury).[9] In short, the Department failed to make the showing necessary to pierce the corporate veil.

On appeal, the Department raises another argument in support of aggregation. It asserts that section 536.087 is modeled after the federal Equal Access to Justice Act ("EAJA") and courts aggregate "to avoid awarding EAJA fees and expenses to litigants ineligible to receive them." The Department posits that "[a] stand-in litigant occurs 'where the real party in interest, being ineligible by reason of its size or affluence for an award of fees under the [EAJA], finds someone to litigate in its place and pay the stand-in's fees,'" quoting *United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 383 (7th Cir. 2010). The Department argues RHS is a stand-in litigant for PPSLR.

The Department did not advance this argument before the AHC, and—as a result— the AHC did not make any determinations on this issue. Contrary to its assertion on appeal, the Department did not argue before the AHC that RHS was a "stand-in" for PPSLR. Nor did it argue that aggregation was appropriate because section 536.087 was modeled after the EAJA. "The general rule is that a court should not set aside administrative actions unless the agency has been given a prior opportunity, on timely request by the complainant, to consider the point at issue." *Sultany Trucking, LLC v. Mo. Clean Water Comm'n*, 662 S.W.3d 775, 783 (Mo. App. W.D. 2023). Because the Department did not make this argument before the AHC, it is not preserved for our review, and we do not address it. *See*

---

[9] Nonetheless, the AHC found RHS had "not 'proximately caused' the Department's potential injury. To the contrary, the Department brought this injury upon itself when it wrongfully denied [RHS's] license."

*id.* (refusing to consider challenge raised on appeal that was not raised before the Commission); *see also Lynch v. Franklin Cnty.*, 604 S.W.3d 855, 869 (Mo. App. E.D. 2020) ("Under Missouri law, a reviewing court may refuse to consider a claim of alleged error by an administrative agency when the aggrieved party fails to raise the objection before that agency.").[10]

For these reasons, we find the AHC did not err in determining RHS was a "party" as that term is defined in section 536.085. Point II denied.

*RHS incurred fees*

In its first point, the Department asserts that, if RHS was a "party," "then it 'incurred' no fees or expenses and so may be awarded none, in that all fees and expenses were paid by parties other than RHS." The Department contends PPSLR and PPFA "incurred" the fees and expenses that were awarded to RHS. We disagree.

Section 536.087 provides that "[a] party who prevails in an agency proceeding . . . shall be awarded those reasonable fees and expenses *incurred by that party* . . . ." § 536.087.1 (emphasis added). The Department argued before the AHC that RHS did not "incur" the fees and expenses it sought. The Department asserted that RHS's attorneys— from the Stinson law firm and PPFA—"provided their legal services at no direct cost to RHS." The Department claimed that PPFA provided its services *pro bono* and—according

---

[10] Although we do not decide the issue, the Department's argument that RHS is a "stand-in" for PPSLR—meaning PPSLR found "someone [(RHS)] to litigate in its place," *see Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d at 383—is belied by the circumstances here: *RHS* held the abortion facility license, and the Department denied *RHS* its license renewal, thereby forcing *RHS* to initiate litigation to retain its license.

to RHS's billing records—Stinson's invoices for legal fees were addressed to PPSLR, not RHS. The Department argued that, as a result, PPSLR and PPFA incurred the fees in this dispute, not RHS, as there was no evidence RHS had paid any legal fees.

The AHC did not expressly address this argument in its decision. However, by awarding RHS attorney's fees and expenses, it necessarily rejected the Department's argument that entities other than RHS incurred the fees and expenses. We find the AHC's decision was supported by the evidence and was not contrary to law.

We first address the Department's argument relating to PPSLR. The term "incur" means to "'become liable or subject to.' It is a synonym of 'accrue.'" *Next Day Motor Freight, Inc. v. Hirst*, 950 S.W.2d 676, 680 (Mo. App. E.D. 1997) (citing Webster's Third New International Dictionary 1146 (1981)); *see also* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/incur (last visited Sept. 3, 2025) (defining incur as "to become liable or subject to"). The evidence supported that RHS "incurred"—*i.e.*, became subject to or accrued—fees and expenses. This evidence included the Management Services Agreement between RHS and PPSLR, and sworn statements in the form of a discovery response and affidavit.

RHS and PPSLR were parties to a Management Services Agreement. Pursuant to this agreement, PPSLR performed certain administrative services for RHS, including accounting, payment, and billing services. Under the terms of the agreement, PPSLR effectively operated as RHS's payment processor: PPSLR paid RHS's invoices and RHS, in turn, reimbursed PPSLR for those payments and paid PPSLR a fee for its administrative services. Given this agreement, evidence that Stinson's invoices were billed to PPSLR did

20

not establish that PPSLR "incurred" Stinson's legal fees; rather, under the terms of the agreement PPSLR paid the invoices and RHS reimbursed PPSLR.[11]

This was confirmed by other evidence. RHS stated in its sworn discovery response that RHS "pays its vendors for any goods or services provided to RHS. In the event PPSLR pays for goods or services intended for RHS, RHS reimburses PPSLR for those expenses." And RHS submitted an affidavit, in which its CEO attested that RHS incurred and paid all legal expenses relating to the merits and fees actions, "including fees for services performed by Stinson on behalf of RHS." These sworn statements and the Management Services Agreement demonstrated that RHS—not PPSLR—"incurred" legal fees.

We next address the Department's argument relating to PPFA, and conclude that RHS "incurred" legal fees and expenses relating to PPFA's work even though PPFA

---

[11] The Department argues we cannot consider the Management Services Agreement because—although it has been included in the record on appeal and was part of the record before the AHC—it was not included in the record before the trial court. In making this argument, the Department relies on section 536.087.7, which provides that "[t]he reviewing or *appellate court's determination on any* judicial review or *appeal* heard under this subsection *shall be based solely on the record made before the* agency or *court below*." (emphasis the Department's). The Department "understands section 536.087.7 to permit this Court to review only records that were before the circuit court." The Department misunderstands section 536.087.7.

The provision in section 536.087.7 quoted by the Department merely ensures that the reviewing court—whether it be a circuit court or appellate court—only considers the record before the body that made the fees decision. In some instances, a circuit court decides whether to award fees. *See, e.g.*, *Casnocha-Jones v. State Bd. of Nursing*, 717 S.W.3d 347, 354-55 (Mo. App. W.D. 2025) (nurse seeking attorney's fees under section 536.087 filed her application for attorney's fees in circuit court—as required—because that is the forum in which she first prevailed against the state). If, here, the trial court had made the fees decision, we would be concerned with the record before the trial court. But it didn't. The AHC made the fees decision and we are reviewing the AHC's decision, and we are thus only concerned with the record before the AHC in making its decision. The reading of section 536.087.7 urged by the Department is illogical. Section 536.087.7's function is to restrict our review *to* the record before the AHC, not to restrict us *from* considering the record before the AHC.

21

provided its legal services *pro bono*. Courts routinely award attorney's fees where legal counsel have provided their services *pro bono*. *See Cornella v. Schweiker*, 728 F.2d 978, 987 (8th Cir. 1984) (holding prevailing party was entitled to attorney's fees under EAJA even though she was represented by counsel on a *pro bono* basis, and noting the "virtual unanimity" among the federal district courts allowing *pro bono* awards under the EAJA[12]); *see also Ostermeier v. Prime Props. Invs. Inc.*, 589 S.W.3d 1, 9 (Mo. App. W.D. 2019) (prevailing parties were not precluded from an award of attorney's fees under the Missouri Merchandising Practices Act ("MMPA") on ground that their counsel acted on a *pro bono* basis; to hold otherwise "would be contrary to the fee shifting purpose of helping secure enforcement of the MMPA"). Like the MMPA, section 536.087 is a fee-shifting statute, and the purpose of section 536.087 would not be furthered by refusing to award a prevailing party fees and expenses because the party's counsel was willing to provide representation *pro bono*. *See Greenbriar Hills Country Club*, 47 S.W.3d at 358 & n.41 (the rationale for "the fee-shifting provisions of section 536.087" is "to encourage private parties to challenge unreasonable government behavior" and "to ensure the legitimacy and fairness of government and the law so that contests between private citizens and the government are decided on the merits of the matter and not on the costs"). For these reasons, we conclude RHS—not PPFA— "incurred" legal fees and expenses under section 536.087.

---

[12] Like section 536.087, the EAJA permits an award of attorney's fees and expenses to the party that "incurred" them. *See* 28 U.S.C. § 2412(d)(1)(A) ("a court shall award to a prevailing party other than the United States fees and other expenses . . . *incurred by that party*" (emphasis added)).

Finally, the Department argues that the "AHC found RHS 'incurred' *no* fees. Instead, all fees were incurred by PPFA and [Stinson]," and thus we should reverse the award. In support, the Department cites two findings of fact related to expenses (not fees) in the Decision on Remand:

1. In the [merits case], Stinson (representing RHS) incurred $2,355 in expenses, for which it billed [PPSLR].

2. In the [merits case], [PPFA] incurred $50,907.97 in expenses.

The Department mischaracterizes these two findings of fact. Given that the AHC was tasked on remand with deciding what amount of expenses were reasonable, it is apparent that these findings of fact were related to the *amount* of expenses incurred, not determinations that PPFA and Stinson—as opposed to RHS—"incurred" expenses.

For these reasons, we find no merit to the Department's argument that RHS did not "incur" fees and expenses. By awarding RHS fees and expenses, the AHC necessarily found RHS "incurred" those fees and expenses. The AHC's determination was supported by competent and substantial evidence, and was not contrary to law. Point I is denied.

*The Department's position was not substantially justified*

In its third point, the Department argues RHS was not entitled to fees and expenses because the Department was substantially justified in denying RHS's license renewal. *See* § 536.087.1 (A prevailing party is not entitled to fees and expenses if the state's position was "substantially justified.").

The Department denied RHS's license renewal on the ground that RHS failed to substantially comply with sections 197.200 through 197.240. However, in the merits

action, the AHC found only two instances where RHS lacked compliance: a failure to file a report and a failure to document action RHS took relating to Staff B's care of Patient 2. The AHC concluded these two instances "did not constitute a *substantial* failure to comply with §§ 197.200 to 197.240, as is required to deny [RHS's] license renewal." The Department did not appeal the merits decision.

Although the Department was ultimately wrong in denying RHS's license renewal, that is not dispositive of whether the Department's position was substantially justified. *See Funk*, 492 S.W.3d at 599 (the fact that the state lost the agency proceeding "creates no legal presumption that its position was not substantially justified." (quoting § 536.087.3)). To that end, in the fees action, the AHC considered whether the Department's denial of RHS's license renewal—albeit wrong—was substantially justified. The Department bore the burden of establishing "substantial justification," and to meet this burden it was required to "show that it had a reasonable basis in both fact and law for its position, and that this basis was not merely marginally reasonable but clearly reasonable, although not necessarily correct." *Dishman v. Joseph*, 14 S.W.3d 709, 717 (Mo. App. W.D. 2000); *see also Funk*, 492 S.W.3d at 597-99.

In its fees decision, the AHC analyzed the reasonableness of the Department's decision to deny RHS's license renewal, which required the AHC to consider whether the Department's belief was reasonable that RHS committed each of the violations alleged. In an analysis that spanned twenty pages, the AHC addressed the Department's arguments relating to the refusal of certain RHS physicians to submit to interviews during the Department's investigation; specific instances of patient care; and RHS's records,

24

documentation practices, policies, and quality assurance reviews. The AHC found that the Department raised four "valid concerns [or] reasonable arguments" in support of its decision to deny licensure, two of which involved the violations determined in the merits action. Nonetheless, the AHC concluded that the Department's position was not substantially justified because:

> [The Department's] valid arguments pale in comparison to the volume and extent of the unreasonable allegations that formed the Department's most serious and admittedly dispositive allegations. The Department's most important deficiency—physician interviews—had no basis in law. In spite of a lack of any other significant evidence of wrongdoing and in spite of the presence of evidence that undercut its allegations, the Department penalized [RHS] for these physicians' refusal to be interviewed by making extreme adverse inferences. The Department supported its clinical evaluations with testimony from an expert with demonstrable ignorance of abortion care, and [the Department Director] directly undercut the Department's positions by acknowledging the ambiguities and gray areas of its case.
>
> Finally, the Department advanced its most serious claim—that [RHS] as condition of its operation and policies failed to provide safe, acceptable care in accordance with all legal requirements—based on dubious allegations related to just four patients among the nearly 4,000 abortions it provided in the calendar year preceding renewal. For these reasons, we find the Department lacked a reasonable basis in law or fact to argue that [RHS] had substantially failed to comply with the requirements of §§ 197.200 to 197.240. Therefore, we find that the Department lacked substantial justification to deny [RHS's] application.

On appeal, the Department argues it was substantially justified in denying RHS's license renewal based on the refusal of certain RHS physicians to submit to interviews, the four "valid concerns [or] reasonable arguments" identified by the AHC, and four "additional, independent reasons."

*Physician Interviews*

The Department first contends "[a] reasonable person could have denied RHS's license based on [RHS's] refusal to produce physicians for interviews."

At the outset of its argument, the Department impermissibly attempts to relitigate the issue of whether RHS was required by law to produce its physicians for interviews. This legal issue was decided in the merits action against the Department. The AHC found no statute or regulation existed compelling an investigated licensee to submit to an interview, and the Department did not appeal this determination. The Department is bound by the AHC's legal conclusion and we will not entertain an attempt to relitigate whether RHS had the legal obligation to produce physicians for interviews. *See M.F. by Fields v. Stringer*, 617 S.W.3d 868, 876 (Mo. App. E.D. 2021) (on appeal of fees decision, the department of mental health was "bound by our resolution of the factual and legal issues" decided in the merits case); *see also Dishman*, 14 S.W.3d at 718 ("the fee hearing is not to be treated as a hearing on a motion for reconsideration").

The Department then argues it was reasonable to read section 197.230.1 as requiring RHS to produce its physicians for interviews. This section provides, in relevant part, the Department "shall make, or cause to be made, such inspections and investigations as it deems necessary." § 197.230.1, RSMo Supp. 2017. Although this provision gives the Department authority to conduct investigations, it does not compel any particular action on the part of the licensee. And it was not reasonable for the Department to read a physician-interview requirement into the statute. The legislature has expressly required that other types of licensees subject to the Department's investigative authority produce staff for

interviews when requested by the Department. *See, e.g.*, § 192.2225.3, .4 (licensed adult daycares "shall cooperate with the investigation and inspection by providing access to the adult day care program, records, and staff," and failure to comply with the Department's investigative request is ground for revocation or denial of license). Yet section 197.230.1 does not contain remotely similar language.

The Department contends it was reasonable to read an interview requirement into the statute because otherwise an abortion facility can thwart a meaningful investigation by refusing to cooperate without consequence. That is not true. As the AHC determined, when conducting an investigation, the Department may draw an adverse inference from a physician's refusal to submit to an interview *if* the inference has a reasonable basis in fact and law. But the AHC found no such reasonable adverse inference could be drawn here, effectively finding the Department did not act in good faith in its pursuit of the physician interviews:[13]

> On May 20, 2019, the Department sent its first correspondence to [RHS] articulating that it could not renew its license without physician interviews. At that time, Drs. [C.M.] and [E.] had already agreed to sit for interviews, but the Department refused and demanded to interview physicians in a particular order—a demand with no legal support applicable to abortion facilities. At hearing, the Department's investigator represented this demand was required for the integrity of the investigation and supported by CMS guidelines inapposite to abortion facilities. This aggressive, and legally unfounded, demand contributed to the remaining doctors' refusal to sit for interviews. The Department's investigators eventually did interview Drs. [C.M.] and [E.], but they asked no questions concerning Patient 2 or Patient 12, except for an abstract question to [Dr. E.] about identifying multiple pregnancies.

---

[13] "Good faith or lack thereof will often be a very relevant and important consideration in making the substantial justification determination . . . ." *Dishman*, 14 S.W.3d at 717.

On appeal, the Department does not challenge these findings of the AHC, nor does the Department persuasively argue that the negative inferences it drew from certain physicians' refusals to be interviewed were reasonable under the circumstances.

In sum, while the Department believed RHS's failure to produce physicians for interviews was a statutory violation, the AHC determined the Department's belief was not reasonable. We discern no error with the AHC's determination, and find it was supported by the evidence.

*Four "Valid Concerns" or "Reasonable Arguments"*

We next address the Department's argument that it "was substantially justified in denying RHS's license on the basis of four concerns the AHC determined were reasonable at the time [the Department] denied the license." The AHC identified four "valid concerns [or] reasonable arguments" of the Department:

(1) RHS's failure to file a complication report for Patient 1

(2) RHS's failure to document Staff B's care relating to Patient 2

(3) Dr. C.M.'s practice of noting she was "present" for procedures, but not in the room with patients

(4) Care provided by Staff B relating to Patient 2

The AHC concluded that it was not reasonable for the Department to believe these four instances constituted a *substantial* failure to comply with sections 197.200 through 197.240, as was required to deny licensure.

On appeal, the Department argues "[a] reasonable person could have denied RHS's license on the basis of the four concerns (individually and collectively)." We find, however,

that three fundamental flaws permeate the Department's "reasonableness" argument, and because of these flaws, the Department has failed to demonstrate the AHC erred.

First, the Department repeatedly attempts to relitigate facts and issues that were decided in the merits action. One example of this involves the second "concern"—RHS's failure to document Staff B's care relating to Patient 2. The Department argues on appeal that the AHC wrongly concluded this was just a "record keeping violation," and that the Department was substantially justified in denying RHS's license renewal based on RHS's "deficient quality-assurance practices." But in the merits action, the AHC found that— besides this "record keeping violation"—it had "no concerns with the substance of [RHS's] quality assurance review," and found "there [were] no other indications of deficient practices." Despite these findings, the Department's entire argument on this issue is an attempt to persuade us that there were "serious, fundamental deficiencies in the quality-review process." As previously stated, the Department's attempts to relitigate the facts decided in the merits action are impermissible. *See Stringer*, 617 S.W.3d at 876; *Dishman*, 14 S.W.3d at 718 (in the fees action, the state was bound by the facts as determined in the merits action; a request for attorney's fees is "not an invitation to engage in a second major litigation").

Second, many of the Department's arguments fail to address the AHC's findings on the issue of "reasonableness" or the evidence that supported those findings. Below are two examples of this.

The first "concern" identified by the AHC was RHS's failure to file a complication report for Patient 1. Section 188.052.2 requires an abortion provider to file a complication

report after a "failed abortion," a term which was not defined by law or by the Department. RHS did not file a complication report after its unsuccessful attempts to perform a surgical abortion on Patient 1 because it contended that Patient 1 did not have a "failed abortion."

The AHC determined Patient 1 did have a "failed abortion," and thus RHS's failure to file the complication report was a violation of section 188.052.2. But the AHC also determined that given the ambiguity of the term "failed abortion"—noting the Department Director's testimony that there is "variability" and "some gray areas" as to what is considered a "failed abortion"—and Patient 1's unique circumstances, RHS's failure to file the report did not justify denial of its licensure.

On appeal, the Department does not address the ambiguity of the term "failed abortion," nor does it acknowledge the Director's testimony as to the variability of that term. Instead, it argues the violation was substantial because it was systemic, citing other testimony from the merits hearing, which—as discussed below—the AHC did not find credible. In short, the Department does not challenge the AHC's basis for its "reasonableness" determination relating to this "concern."

The Department also ignores the AHC's findings and evidence supporting those findings relating to the third "concern"—Dr. C.M.'s practice of noting she was "present" for procedures when she was not in the room but was immediately available in the surgical suite. Without determining whether Dr. C.M.'s practice constituted a regulatory violation, the AHC found "any possible violation" of the regulation was not substantial and not a ground to deny license renewal, because the Department pled in its amended answer that

RHS had submitted an acceptable plan of correction for this deficiency. As such, the AHC found this "alleged violation" could not reasonably constitute a basis to deny licensure.

On appeal, the Department does not address the AHC's finding that this problem was acceptably remedied and thus did not provide a basis for denying license renewal. Nor does it address that its own pleading was the basis for the AHC's finding. The Department wholly ignores this finding and the basis for this finding and instead argues—again—this was a substantial violation of the law because it was systemic.

The Department essentially argues reasonableness in a vacuum, as if the AHC's findings and the evidence supporting those findings do not exist, instead only pointing to evidence that it deems supportive of its position. The Department's repeated failure to address the AHC's findings and the evidence supporting those findings is fatal to its argument: the Department cannot demonstrate the AHC erred without actually challenging the AHC's determinations or accounting for the evidence that supported those determinations.

Third, the Department relies on evidence that involved credibility determinations, which the AHC decided against the Department. An example of this can be found in the Department's argument relating to RHS's failure to file a complication report regarding the "failed abortion" of Patient 1. As previously noted, the Department argues on appeal that this violation was substantial and sufficient to warrant licensure denial because the Department "could have reasonably understood [the violation] as systemic." To support this argument, the Department relies on testimony from the Department Director at the merits hearing, in which he stated the complication-report requirement had been

disregarded for many years. But the AHC did not credit this testimony; instead, it found there were "no other instances of [RHS's] failure to submit a complication report." The Department effectively requests we consider the evidence contrary to the AHC's credibility determination, which we cannot do. *See Donaldson v. Mo. State Bd. of Registration for the Healing Arts*, 615 S.W.3d 57, 62 (Mo. banc 2020) (in reviewing the AHC's decision "this Court defers to the AHC's determinations of credibility of witnesses and the weight given to conflicting evidence"); *see also Gan v. Schrock*, 640 S.W.3d 451, 456 (Mo. App. W.D. 2022) ("Because the AHC is the sole judge of the credibility of witnesses and the weight and value to give to the evidence, we will defer to its credibility findings." (internal marks omitted)).

For these reasons, we are not persuaded by the Department's argument relating to the four "valid concerns [or] reasonable arguments." The Department has failed to demonstrate the AHC's determinations relating to these concerns were not supported by competent and substantial evidence, or were contrary to law.

### *Four Additional, Independent Reasons*

The Department next argues "[a] reasonable person could have denied RHS's license on the basis of four additional, independent reasons":  (1) RHS's alleged violation of the informed-consent statute; (2) RHS's alleged failure to investigate a gestational age discrepancy for Patient 1; (3) RHS's performing Patient 12's abortion at RHS's facility instead of at a hospital; and (4) RHS's alleged counseling of Patient 12 to have a therapeutic abortion.

The AHC concluded the Department had no reasonable basis in fact or law to believe that the above occurrences constituted violations of the law. We have reviewed the arguments of the parties and the record on appeal, and we are not persuaded by the Department's arguments that the AHC erred. We find the AHC's conclusions to be supported by competent and substantial evidence, and not contrary to law.

In summary, the AHC determined the Department was not substantially justified in denying RHS's license renewal, and the Department has not demonstrated this determination was contrary to law or was unsupported by the evidence. Point III is denied.

*No special circumstances existed that made the award unjust*

In its fourth point, the Department argues RHS was not entitled to fees and expenses because special circumstances made such an award unjust. *See* § 536.087.1 (A prevailing party is not entitled to fees and expenses if "special circumstances make an award unjust."). The Department's point asserts the following were "special circumstances" that would make an award unjust: (1) an award of fees and expenses "would provide a windfall"; (2) an award "would reimburse a high-worth entity"; (3) an award "would reward RHS's many violations"; and (4) "the equities do not favor awarding fees and expenses when [the Department] was unable to appeal [the merits decision] because the issue became moot."

The Department did not advance its "windfall" argument before the AHC, nor did it develop it in the argument section of its brief on appeal, and thus we do not address it. The AHC rejected the Department's arguments that an award would "reimburse a high-worth entity" and reward RHS's "many violations." We, too, find no merit to these contentions. As explained above, RHS, PPSLR, and PPFA were not deemed "one entity"

under sections 536.085 and 536.087, and the Department failed to establish RHS committed "many" violations of the law.

The AHC refused to address the Department's "mootness" argument, finding it was not properly raised before the AHC. The Department does not acknowledge this on appeal, and makes no argument that the AHC erred in refusing to consider this argument or that its argument had been properly raised. To that end, the Department has failed to demonstrate the AHC erred in its determination regarding whether "mootness" was a "special circumstance." *See Kader v. Harris Stowe State Univ.*, 712 S.W.3d 820, 822 (Mo. App. E.D. 2024) (we presume the determination being reviewed is correct "and an appellant bears the burden of proving his or her claims of error"); *see also In re Z.R.L.C.*, 700 S.W.3d 539, 541 (Mo. App. S.D. 2024) (it is the appellant's burden to show error, "and we will affirm unless the appellant meets that burden").[14]

---

[14] Even if we were to consider the substance of the Department's mootness argument, we would not be persuaded. The Department contends it was "deprived" of the "opportunity" to appeal the merits decision by speculating that such an appeal would have been moot, given that the AHC issued the merits decision "two days before the relevant licensing year [(2019-2020)] ended." But the Department does not develop this cursory contention. For example, it does not explain—either in its opening or reply brief—why the "public interest" exception to the mootness doctrine would be inapplicable if the Department's appeal were, indeed, moot. *See Hummel v. Ashcroft*, 647 S.W.3d 577, 582 (Mo. App. W.D. 2022) (Under the "public interest" exception to the mootness doctrine, an otherwise moot appeal may proceed if the "case presents an issue that (1) is of general public interest; (2) will recur; and (3) will evade appellate review in future live controversies."). And although the Department broadly states the merits decision "was erroneous on every point, *see supra*, and it would not have withstood judicial review," the Department's own actions undercut this assertion. The Department contended in the merits action that RHS refused to correct numerous deficiencies and legal violations, and thus the Department could not renew RHS's 2019-2020 license. Yet shortly after the AHC issued its merits decision, the Department renewed RHS's license for the 2020-2021 year. By law, the Department could not renew RHS's license unless it determined RHS was "in compliance with all requirements of applicable regulations and statutes." 19 CSR 30-30.050(2)(I).

The AHC's determination that no "special circumstances" existed was supported by competent and substantial evidence and was not contrary to law. Point IV is denied.[15]

## Conclusion

For these reasons, we affirm the judgment of the trial court affirming the judgment of the AHC awarding RHS attorney's fees and expenses. We remand this matter to the trial court with directions to remand to the AHC to determine the proper amount of fees and expenses to be awarded to RHS in defending this appeal.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

---

[15] RHS has filed a Motion for Attorneys' Fees on Appeal under section 536.087 and Western District Local Rule 29. We conclude that RHS is entitled to the reasonable fees and expenses it incurred in this appeal. *See Greenbriar Hills Country Club*, 47 S.W.3d at 359 n. 42 ("Greenbriar will also be entitled to reasonable fees and expenses incurred in defending the fee award should an appeal of the fee determination ensue."); *Funk*, 492 S.W.3d at 593 n. 5. On remand, the AHC should determine the proper amount of fees and expenses, and order RHS be awarded accordingly. *See Funk*, 492 S.W.3d at 595 n.6 ("An appellate court can, and usually will, remand the case to the trial court or to the agency with directions to determine the award of attorney's fees."); *cf. Schrock v. Gan*, 563 S.W.3d 127, 136 n.9 (Mo. App. W.D. 2018).